UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

ECOGENSUS, LLC,                                                :
VIKINGPEAK ENERGY FUELS, LLC,                                 :
VIKINGPEAK MANAGEMENT COMPANY, LLC,                           :
VIKINGPEAK CAPITAL GROUP, LLC,                                :
BJØRNULF ØSTVIK,                                              :
                                                              :        Civ. No.: 20-cv-3629 (VSB)
                    Plaintiffs,                               :
                                                              :
            v.                                                :
                                                              :
MATTHEW PACELLA,                                              :
MICHAEL M. MELNIK,                                            :
JAY EDELSON,                                                  :
BENJAMIN RICHMAN,                                             :
EDELSON PC,                                                   :
                                                              :
                    Defendants.                               :

------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PACELLA'S
MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE,
<u>DISMISS THE COMPLAINT</u>**

## TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................................1

II.  JURISDICTION ...............................................................................................3

III. FACTUAL BACKGROUND..........................................................................3

    A.   PACELLA HELPS ØSTVIK GROW THE COMPANIES
        AND FIND ACCESS TO CAPITAL ...............................................................4

    B.   THE 2017 AND 2018 NEGOTIATIONS OVER PACELLA'S COMPENSATION ................5

    C.   ØSTVIK'S TRANSACTIONS WITH MELNIK AND THE EDELSON DEFENDANTS ..........6

        1.   The Melnik Loan Transaction with Ecogensus ..........................................6

        2.   Østvik Retains the Edelson Defendants to Assist Him
            with the Legal Matter..................................................................................7

        3.   The Proceeds from the Legal Matter Settlement .......................................8

    D.   PACELLA'S TENURE AS A CONTRACTOR,
        NEGOTIATIONS OVER PACELLA'S COMPENSATION,
        AND EFFORTS TO COLLECT AMOUNTS DUE FROM ØSTVIK ....................................9

    E.   ØSTVIK COMMENCES ARBITRATION PROCEEDINGS AGAINST PACELLA,
        AND THEN FILES THIS ACTION...............................................................................10

IV.  ARGUMENT...................................................................................................11

    A.   PLAINTIFFS SHOULD BE ORDERED TO ARBITRATE
        THEIR CLAIMS AGAINST PACELLA.......................................................................11

        1.   A Valid Agreement to Arbitrate Exists, as Plaintiffs Recognize...............13

        2.   The Disputes at Issue Herein Fall Within the Scope
            of the Existing Arbitration Agreements.....................................................14

        3.   Plaintiffs' Three Federal Statutory Claims Are Arbitrable........................14

        4.   Staying Nonarbitrable Claims....................................................................15

        5.   Pacella Did Not Waive His Right to Arbitrate
            the Claims Against Him..............................................................................15

i

B.     ALTERNATIVELY, THE COURT SHOULD DISMISS PACELLA
FROM THIS ACTION FOR LACK OF PERSONAL JURISDICTION AND
DISMISS EACH COUNT OF THE COMPLAINT AGAINST PACELLA
FOR FAILURE TO STATE A CLAIM ...................................................................16

1.     The Court Lacks Personal Jurisdiction over Pacella...................16

2.     The Court Should Dismiss Each Count against Pacella
for Failure to State a Claim ......................................................17

a.     The RICO Claims (Counts 2 & 3)
Should be Dismissed.................................................18

b.     The CFAA Claim (Count 1)
Should be Dismissed.................................................21

c.     The Extortion Claim (Count 4)
Should be Dismissed.................................................22

d.     The Misappropriation Claim (Count 7)
Should be Dismissed.................................................22

e.     The Breach of Contract Claim (Count 5)
Should be Dismissed.................................................23

f.     The Breach of Fiduciary Duty Claim (Count 9)
Should be Dismissed.................................................24

3.     The Court Should Dismiss the State Law Claims......................24

IV.   CONCLUSION ............................................................................................25

# TABLE OF AUTHORITIES

<u>Cases</u>

*Alghanim v. Alghanim*,
    828 F. Supp. 2d 636 (S.D.N.Y. 2011)......................................................................14, 15

*Am. E Grp. LLC v. Livewire Ergogenics Inc.*,
    432 F. Supp. 3d 390 (S.D.N.Y. 2020)............................................................................12

*Arciniaga v. General Motors Corp.*,
    460 F.3d 231 (2d Cir. 2006)...........................................................................................12

*Atl. Gypsum Co. v. Lloyds Int'l Corp.*,
    753 F. Supp. 505 (S.D.N.Y. 1990) .................................................................................19

*AT&T Mobility, LLC v. Conception*,
    131 S. Ct. 1740 (2011)...................................................................................................11

*BrandRep, LLC v. Ruskey*,
    No. 2018-0541, 2019 WL 117768 (Del. Ch. Jan. 7, 2019)............................................23

*Brown v. Showtime Networks, Inc.*,
    394 F. Supp. 3d 418 (S.D.N.Y. 2019)............................................................................25

*Chen-Oster v. Goldman, Sachs & Co.*,
    ___ F. Supp. 3d. ___,
    No. 10-6950, 2020 WL 1467182 (S.D.N.Y. Mar. 26, 2020)....................................15, 16

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013)...........................................................................................21

*Doe #1 v. Coll. Bd.*,
    440 F. Supp. 3d 349 (S.D.N.Y. 2020)............................................................................12

*Eliahu v. Jewish Agency for Israel*,
    919 F.3d 709 (2d Cir. 2019)...........................................................................................22

*Fica Frio, Ltd. v. Seinfeld*,
    434 F. Supp. 3d 80 (S.D.N.Y. 2020)..............................................................................17

*Fire & Police Pension Ass'n of Colorado v. Bank of Montreal*,
    368 F. Supp. 3d 681 (S.D.N.Y. 2019)............................................................................17

*Foster v. Wintergreen Real Estate Co.*,
    363 F. App'x 269 (4th Cir. 2010)...................................................................................19

*Gifford v. United N. Mortg. Bankers, Ltd.*,
    No. 18-6324, 2019 WL 3685225 (S.D.N.Y. July 8, 2019) ........................................18, 22

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ................................................................................................12

*Great Lengths Universal Hair Extensions S.r.L. v. Gold*,
    No. 16-193, 2017 WL 1731184 (S.D.N.Y. Mar. 29, 2017) ............................................14

*In re Platinum & Palladium Antitrust Litig.*,
    ___ F. Supp. 3d ___,
    No. 14-9391, 2020 WL 1503538 (S.D.N.Y. Mar. 29, 2020) ..........................................17

*Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP*,
    434 F. Supp. 2d 211 (S.D.N.Y. 2006) ......................................................................16

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018) ....................................................................................20

*LCS Grp., LLC v. Shire LLC*,
    No. 18-2688, 2019 WL 1234848 (S.D.N.Y. Mar. 8, 2019) ............................................21

*Lesser v. TD Bank, N.A.*,
    No. 18-9922, 2020 WL 2787645 (S.D.N.Y. May 28, 2020) ..........................................25

*Martin v. SCI Mgmt. L.P.*,
    296 F. Supp. 2d 462 (S.D.N.Y. 2003) ......................................................................15

*Mastercraft Decorators, Inc. v. Orlando*,
    356 F. Supp. 3d 259 (W.D.N.Y. 2018) ......................................................................23

*MHS Capital LLC v. Goggin*,
    No. 2017-0449, 2018 WL 2149718 (Del. Ch. May 10, 2018) ........................................22

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015) ................................................................................................18

*Riddle v. PepsiCo, Inc.*,
    440 F. Supp. 3d 358 (S.D.N.Y. 2020) ....................................................................... 4

*SBC Interactive, Inc. v. Corp. Media Partners*,
    714 A.2d 758 (Del. 1998) ......................................................................................13

*Watral v. Silvernails Farm LLC.*,
    51 F. App'x 62 (2d Cir. 2002) ................................................................................18

*Williams v. Affinion Grp., LLC*,
    889 F.3d 116 (2d Cir. 2018)...........................................................................................18

*Williams v. Equitable Acceptance Corp.*,
    ___ F. Supp. 3d. ___,
    No. 18-7537, 2020 WL 1181734 (S.D.N.Y. Mar. 11, 2020)...................................19, 20

*Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*,
    No. 14-7349, 2016 WL 1298987 (S.D.N.Y. Mar. 31, 2016)..........................................20

*Yeransian v. Markel Corp.*,
    No. 16-808, 2017 WL 3225987 (D. Del. July 31, 2017) .................................................12

Defendant Matthew Pacella ("Pacella"), pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. and, alternatively, Rules 9(b) and 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure (the "Rules"), hereby submits this *Memorandum of Law in Support of Defendant Pacella's Motion to Compel Arbitration or, in the Alternative, Dismiss the Complaint*, and seeks an Order dismissing the Complaint filed by Plaintiffs Bjørnulf Østvik ("Østvik"), Ecogensus, LLC ("Ecogensus"), VikingPeak Management Company, LLC ("VP Management"), VikingPeak Energy Fuels, LLC ("VP Energy Fuels"), VikingPeak Capital Group, LLC, ("VP Capital" and, together with Ecogensus, VP Management and VP Energy Fuels, the "Companies") against Defendants Pacella, Michael M. Melnik ("Melnik"), Edelson PC (the "Edelson Firm"), Jay Edelson ("Edelson") and Benjamin Richman ("Richman" and together with the Edelson Firm and Edelson, the "Edelson Defendants"), and respectfully states as follows:

## I.      INTRODUCTION

This case tests the very limits of good faith pleading.  Plaintiff Østvik filed a rambling complaint seeking an inexplicable $140 million from Defendants based on vague and innocuous allegations that, in 2018, Østvik paid Pacella a certain sum then due and, in 2019, Pacella and Melnik demanded payment of other amounts that Østvik still owes to each of them.  According to Østvik, since August 2019, Pacella has been seeking payment on account of services that Pacella performed for Plaintiffs. (¶ 112).[1]  Østvik also explains that Melnik loaned money to Ecogensus in 2017, (¶ 53), and that Østvik did not make a repayment on the loan "at the beginning of 2019" because "Ecogensus was … short of working capital …." (¶ 100).  The Edelson Defendants seemingly are included in this action because, beginning in September 2019, they represented Pacella and Melnik in their respective efforts to obtain payment by sending

---

[1]      Citations in the form of "¶ __" refer to paragraphs in the Complaint.

Østvik three demand letters. (¶¶ 120, 128-29).  It is from these allegations that Østvik seeks to concoct a federal case for racketeering.

What does one file when confronted with multiple demands for payment that are disputed?  Maybe nothing; maybe a declaratory judgment action.  Østvik opted for a different approach.  Østvik looks back in time and spins a long and disjointed tale about alleged statements and activities (some of which he believes are embarrassing), and then attempts to use those insipid allegations as the foundation for causes of action that are reserved for genuinely-egregious conduct.  The first 14 paragraphs of his Complaint are rife with hyperbole and use of terms like "conspiracy" and "extortion" to describe alleged events that took place "in the spring and summer of 2019."  But, in the remaining 196 paragraphs of his Complaint, Østvik makes no attempt to demonstrate that any of the conduct he alleges in Paragraphs 1 through 14 actually took place.  Instead, the Complaint is an exercise in paranoia and projection, in which Defendants' straightforward demands for compensation and repayment—and a party's occasional use of an "expletive"—somehow have been transformed into a RICO, fraud and extortion case.  In reality, Østvik does not want to pay the amounts Pacella and Melnik have demanded, and he filed this suit in bad faith as a preemptive strike, hoping that bringing scandalous claims might force Pacella and Melnik to walk away from the debts Østvik owes them.

On top of all of this, as Østvik himself acknowledges, several months ago, "Østvik and the [C]ompanies commenced [an arbitration] proceeding" against Pacella because "[c]ertain of Pacella's contracts with [VP Management], Ecogensus and [VP Energy Fuels] contain arbitration provisions." (¶ 130).  Østvik is right; as a matter of law, valid and enforceable arbitration agreements require Plaintiffs to pursue their purported claims against Pacella in arbitration. *See infra* at 11-16.  Indeed, Pacella soon will be filing counterclaims in the arbitration proceeding

that Østvik already has commenced.  The Court should therefore dismiss this case in its entirety in favor of arbitration.

Yet, even if the Court finds the arbitration agreements unenforceable and determines that Plaintiffs may pursue their claims against Pacella in a courtroom, the Court should dismiss Pacella from this action for lack of personal jurisdiction, for there is simply no connection to the Southern District of New York.  Likewise, the Court should dismiss each of the causes of action against Pacella for failure to state a claim.  The Complaint is woefully inadequate and cannot be saved by amendment.  As such, and as explained below, the Court should grant dismissal of this case with prejudice.

## II.      JURISDICTION

Østvik contends that the Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332, and that the Court has supplemental jurisdiction over his state law claims. (¶¶ 26-27).  Østvik also contends that the Court has jurisdiction over each Defendant because the activities alleged in the Complaint "caused foreseeable injury within [the State of New York]." (¶ 28).  As explained below, the Court lacks personal jurisdiction over each Defendant including Pacella, and the Court cannot exercise diversity jurisdiction in this case. *See infra* at 24-25.

## III.     FACTUAL BACKGROUND

Pacella disputes most of the factual allegations in the Complaint, but understands that the Court must accept the allegations therein as true for purposes of deciding the instant motion. *See infra* at 17-18.  Thus, the following facts are taken from the allegations in the Complaint, as

supplemented by the documents referenced and cited therein, and other documents of which the Court may take judicial notice or otherwise properly consider.[2]

### A.   PACELLA HELPS ØSTVIK GROW THE COMPANIES AND FIND ACCESS TO CAPITAL

In early 2016, after Østvik founded the Companies, he met Pacella. (¶¶ 30, 32).  In July 2016, Østvik offered Pacella an opportunity to join the Companies. (¶ 37).  On August 1, 2016, VP Management and Pacella entered into an *Employment Agreement* (the "Pacella Employment Agreement"). (¶ 39; Ex. A).[3]  Pursuant to the Pacella Employment Agreement, Pacella became an employee of VP Management, in addition to an officer of, and Co-General Counsel for, Ecogensus and VP Energy Fuels. (¶ 39; Ex. A at § 2(a)).  In those roles, Pacella was required "to devote his best efforts and substantial business time and attention to the business and affairs of [VP Management,] … [VP Energy Fuels] and Ecogensus …." (Ex. A at § 2(b)).  Accordingly, Pacella naturally was exposed to "non-public business information about Ecogensus, [VP Management] and [VP Energy Fuels]," (¶ 40), and assisted the Companies by, among other things, identifying and retaining outside counsel for their legal needs. (¶ 38).

Through their working relationship, Østvik "trust[ed]" Pacella and "confided in Pacella" about personal matters. (¶ 41).  In particular, Østvik alleges that he revealed three sensitive matters to Pacella: (i) a "legal matter" in which certain third parties purportedly threatened Østvik's safety (the "Legal Matter"); (ii) "abuse [Østvik] suffered in childhood" (the "Abuse

---

[2]      "In considering a motion to dismiss, 'a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.'" *Riddle v. PepsiCo, Inc.*, 440 F. Supp. 3d 358, 362 (S.D.N.Y. 2020) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).  "In addition, the Court may consider materials subject to judicial notice, including court filings in other litigation, 'not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings.'" *Id.* (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).

[3]      Unless otherwise specified, citations in the form of "Ex. __" refer to exhibits attached to the *Declaration of Matthew Pacella*.

Matter"); and (iii) "a violent episode in 2014" in which Østvik purportedly was "attack[ed]" and "assault[ed]" (the "2014 Incident"). (¶¶ 7 n.1, 49, 52).  In his Complaint, Østvik refers to these three matters as the "Confidential Matters." (¶ 7 n.1).

### B.    THE 2017 AND 2018 NEGOTIATIONS OVER PACELLA'S COMPENSATION

Østvik alleges that, in January 2017, Pacella sought additional compensation "in exchange for keeping the Confidential Disclosures secret." (¶ 52).  At the time, Østvik responded that he would "attempt to work something out." (*Id.*).  Østvik does not allege that Pacella *actually disclosed* confidential information to anyone, including during the period of time that Østvik was "consider[ing]" Pacella's request for additional compensation. (*Id.*)  Rather, Østvik merely offers his view that, "[i]n retrospect," Pacella's request for additional compensation somehow was an attempt at "theft of corporate assets" and "wrest[ing] control of the [C]ompanies." (*Id.*).  Østvik does not allege that, in the course of these conversations in January 2017, Pacella *actually stole* corporate assets or *actually wrested* control over the Companies.[4]

Six months later, in July 2017, Pacella allegedly again sought additional compensation; this time, however, Pacella apparently was "angry" and used an "expletive." (¶ 62).

Nine months later, in April 2018, Pacella and Østvik met for dinner. (¶¶ 81-82).  Østvik alleges that Pacella again requested additional compensation, used "obscenities" and "threat[ened]" to "'destroy' Østvik and … 'bring down' his [C]ompanies." (¶¶ 82, 84).  Østvik also alleges that Pacella "screamed that he … had an uncle in the Mafia and that Pacella himself hoped to become a 'made man.'" (¶ 84).  And although Østvik fails to allege any *actual injury* whatsoever—aside from purportedly listening to Pacella's alleged hijinks—Østvik asserts that he

---

[4]     To the contrary, Østvik later alleges that Pacella's role in the Companies *actually diminished* in late 2018 and early 2019. *See infra* at 9.

believed his "safety was at stake," (*id.*), even though he would continue working with Pacella for more than a year thereafter. (¶ 114).

### C.   ØSTVIK'S TRANSACTIONS WITH MELNIK AND THE EDELSON DEFENDANTS

Østvik alleges that "Pacella devised a plan of extortion that would include theft of corporate assets to attempt to wrest control of the [C]ompanies," and that Pacella essentially recruited others—*i.e.*, Melnik and the Edelson Defendants—for that purpose. (¶¶ 52-54).  Per Østvik, the "ultimate goal" was "to take [the Companies] away from Østvik …." (¶ 11).  Yet, rather than allege any facts to demonstrate this so-called "conspiracy" to eliminate Østvik from ownership and control, (¶¶ 3, 11), Østvik merely alleges the circumstances surrounding Melnik's and the Edelson Defendants' introductions to Østvik—and their later interactions with him.

### 1.   The Melnik Loan Transaction with Ecogensus

According to the Complaint, in May 2017, Pacella introduced Østvik to Melnik when "Pacella was working … on certain financial arrangements for Ecogensus." (¶ 53).  Specifically, Østvik was "consider[ing] a loan transaction at Ecogensus." (*Id.*).  Accordingly, in June 2017, after performing "[due] diligence" and "negotiat[ing]" terms, "Melnik agreed to make a loan to [Ecogensus]" and "close[d on] the transaction" (the "<u>Melnik-Ecogensus Loan</u>"). (*Id.*)  In the absence of any alleged wrongdoing or injury in connection with the Melnik-Ecogensus Loan, Østvik offers his unsupported hindsight speculation that "Pacella conspired with Melnik and Melnik agreed to make a loan to [Ecogensus] to infiltrate the company as the first step in the conspiracy to extort and … gain interests in [VP Energy Fuels]." (¶ 53).  Østvik fails, however, to allege any facts to demonstrate that Pacella and Melnik *actually infiltrated* Ecogensus or *actually extorted* interests in VP Energy Fuels (whatever those allegations mean).  Recognizing that he cannot state any claims against Defendants for causing Ecogensus to accept a loan from

Melnik, Østvik notes that on two occasions—in May and December 2017—Pacella explored the possibility of Melnik actually purchasing an interest in VP Energy Fuels. (¶¶ 53, 72).  Østvik does not allege whether Melnik *actually considered* acquiring an interest in VP Energy Fuels but, in any event, "Østvik declined" the invitation. (¶ 53).  And because these allegations do not state any claims, Østvik also seeks to impugn Melnik's desire (as a lender) "to earn a high interest yield …." (¶ 60).

### 2.    Østvik Retains the Edelson Defendants to Assist Him with the Legal Matter

Also in May 2017, Pacella introduced Østvik to the Edelson Defendants so that they might serve as Østvik's personal counsel in connection with his Legal Matter. (¶¶ 54, 65).  In June 2017, Østvik met with Edelson and Richman to discuss whether the Edelson Firm could represent Østvik, (¶ 57), and "Østvik entered into an agreement with the Edelson [F]irm on June 20, 2017." (¶ 59).  The following month, "the Edelson Defendants had commenced work representing Østvik on his [Legal Matter]." (¶ 65).  During this time, Pacella opined to Østvik that if he pursued his claims before a jury, he might realize a recovery of as much as $25 million. (*Id*.).  The Edelson Defendants allegedly had a similar view and encouraged Østvik to pursue his claims before a jury rather than in a confidential mediation setting. (¶¶ 65, 69).  Østvik preferred mediation. (¶ 65).  Despite allegations that the Edelson Defendants "pressure[d]" Østvik to consider filing a complaint rather than mediating his claims, (¶¶ 65, 69), the Edelson Defendants abided by Østvik's wishes and "embarked upon a negotiation process attempting to reach a resolution on Østvik's behalf." (¶ 68).

Østvik alleges that, in or around September 2017, Østvik wanted "to find alternative outside counsel," which Pacella thought ill-advised. (¶ 69).  Østvik decided not to terminate his relationship with the Edelson Defendants but, instead, asked them to participate in "an initial

mediation session" in "late 2017." (¶ 74).  The mediation did not result in a settlement of the Legal Matter claims, and the Edelson Defendants allegedly again advised "Østvik to pursue litigation, but Østvik was unwilling to do so." (*Id.*).  At that time, Østvik apparently again spoke with Pacella about possibly identifying replacement counsel and, again, Pacella thought it ill-advised. (*Id.*).  Østvik alleges that, in March 2018, he and Pacella continued to debate whether Østvik should terminate his engagement with the Edelson Defendants. (¶ 75).  In light of the Edelson Firm's entitlement to a contingency fee, (¶ 79), Pacella expressed his concern that if Østvik terminated his relationship with the Edelson Defendants, they would potentially sue Østvik for improperly denying them compensation. (¶ 75).  Østvik again decided not to terminate the engagement but, instead, asked the Edelson Defendants to participate in "a second mediation session … in late March 2018." (¶¶ 75, 78).

"The second mediation session … resulted in a quick resolution for Østvik." (¶ 78). Although Richman and Pacella attended a celebratory dinner that evening, (¶ 80), Østvik alleges "that the Edelson Defendants were 'furious' at the result … believing the settlement would have been $20,000,000" if Østvik had "sued and not been so worried about the Confidential Disclosures …." (¶¶ 78-79).  Notwithstanding this alleged (but moot) disagreement over strategy, Østvik alleges that the Edelson Defendants adhered to Østvik's wishes and resolved the Legal Matter in the manner that Østvik desired—*i.e.*, through a successful mediation. (¶¶ 74, 78).

### 3.    The Proceeds from the Legal Matter Settlement

In April 2018, the Edelson Firm received the settlement proceeds from their resolution of the Legal Matter. (¶¶ 86-87).  The Edelson Defendants planned to "withhold a portion for themselves" on account of amounts due for legal services and then "release" the remaining sum to Østvik. (¶ 86).  Østvik alleges that Pacella sought additional compensation from Østvik, to be

paid from the balance of the settlement proceeds that Østvik expected from the Edelson Firm. (¶ 91).  Pacella allegedly "threatened" that, if Østvik did not pay the additional compensation, (i) Pacella would reveal the Confidential Information, (ii) "Ostvik's safety [would be] at risk," (iii) Pacella would "sabotage certain important pending deals of Østvik's businesses," and (iv) "Melnik could become 'problematic' for Østvik." (¶ 90).  Østvik alleges that he "eventually capitulated and paid Pacella $228,000" for "Legal Services Rendered." (¶ 93).

### D.  PACELLA'S TENURE AS A CONTRACTOR, NEGOTIATIONS OVER PACELLA'S COMPENSATION, AND EFFORTS TO COLLECT AMOUNTS DUE FROM ØSTVIK

In April 2018, Pacella allegedly agreed that he would "terminate[] … his roles at [the C]ompanies in three months …." (¶ 94).  In July 2018, Pacella allegedly changed his mind and "engag[ed] Østvik in … discussions concerning his ongoing role" with the Companies. (¶ 94) And although Østvik alleges that Pacella "*hint[ed]* that he could do harm to Plaintiffs' businesses if he did not receive additional funds," (¶ 94 (emphasis added)), Østvik fails to identify any harmful acts and, instead, acknowledges that Pacella offered to stay with the Companies because he was deeply involved with their "deals," which could go "'sideways' if he exited" prematurely. (¶ 96).  And despite Østvik's allegation that Pacella "plan[ned] to wrest control of the [C]ompanies" and obtain "millions of shares of equity from Plaintiff," (¶¶ 3, 38, 52), Østvik alleges that, by "early 2019," Pacella had a diminished role; "Pacella had become a contractor to [Ecogensus and VP Energy Fuels] rather than an employee." (¶ 102).

Thereafter, in July 2019, Østvik learned that Pacella had established two "holding compan[ies]" and "confronted Pacella" about them.  (¶¶ 104, 106-07).  During this confrontation, Pacella allegedly proclaimed that he expected to receive valuable equity interests in the Companies. (¶ 107).  Nevertheless, Østvik alleges that he "had no intention of granting" Pacella such equity interests, (*id*.), and Østvik does not allege that Pacella ever obtained them.  One

month later, in August 2019, as a part of Pacella's eventual departure from the Companies,
Pacella allegedly requested that Østvik pay him $20,000, at which point the only remaining
amounts owed to Pacella for his contractor services would be for unreimbursed "expenses."
(¶ 112).  Also in August 2019, Pacella ceased working with the Companies. (¶ 114).

Østvik alleges that after Pacella ceased working for the Companies, the Edelson
Defendants sought to obtain unpaid amounts due to Pacella. (¶¶ 116-18, 120).  On Pacella's
behalf, the Edelson Defendants allegedly sought "an immediate enormous cash payment," "large
payments from each of Østvik's companies," and "millions of shares in Ecogensus and [VP
Energy Fuels]." (¶ 120).  The Edelson Defendants also allegedly "demanded payments to Melnik
…." (*Id.*).[5]  Østvik offers his view that "Pacella was not entitled" to the amounts sought, (¶ 122),
and his interpretation of the Edelson Defendants' "veiled threats to publicize the Confidential
Disclosures" if the parties could not reach an agreement. (¶¶ 122-23, 126).  But, ultimately,
Østvik concedes that the Edelson Defendants made no such "threats"; rather, they indicated that
if a lawsuit had to be filed to recover amounts due to Pacella and Melnik, Østvik's "sensitive
information" could be "redact[ed]" in a public filing. (¶¶ 125, 128).  In November 2019 and
March 2020, after the parties were unable to reach an agreement on amounts owed to Pacella and
Melnik, the Edelson Firm sent additional demand letters. (¶¶ 128-129).

E.   **ØSTVIK COMMENCES ARBITRATION PROCEEDINGS AGAINST PACELLA, AND
THEN FILES THIS ACTION**

In October 2019, "Østvik and [his C]ompanies commenced a AAA proceeding" against
Pacella because "[c]ertain of Pacella's contracts with [VP Management], Ecogensus and [VP

---

[5]   Earlier in 2019, Melnik "demand[ed] Østvik pay back Melnik's loan to Ecogensus in full," but
Østvik declined because "Ecogensus was … short of working capital at the beginning of 2019" and "[i]t
was clear that Melnik was not in immediate need of payment." (¶ 100).

Energy Fuels] contain arbitration provisions." (¶ 130).   In May 2020, Plaintiffs filed their Complaint before this Court.

## IV.   ARGUMENT

The Complaint demonstrates one thing for sure: Østvik wishes that he had not paid Pacella anything in April 2018, and Østvik disputes that he owes still-unpaid amounts due to Pacella and Melnik.   Otherwise, the Complaint presents pages-upon-pages of wild allegations that fail to demonstrate an *actual controversy* or *actual injury* for anything.   Instead, Plaintiffs spin a series of tales—none of which are material to the allegations in the first 14 paragraphs of the Complaint—charging Defendants with "extort[ion of] cash and millions of shares of equity from Plaintiffs."   Østvik has not alleged any actionable conduct; he simply regrets paying Pacella amounts due and does not want to pay anything more on account of his debts.   Indeed, Østvik commenced this action as a preemptive strike—and pretends that his nonexistent damages total $140 million.

As explained below, the Court should enter an Order compelling Plaintiffs to pursue their claims against Pacella in arbitration, as required under the Pacella Employment Agreement.   But even if the Court does not compel arbitration, the Court should dismiss Pacella from this action for lack of personal jurisdiction pursuant to Rule 12(b)(2), and dismiss each of the claims against Pacella for failure to state a claim pursuant to Rules 9(b) and 12(b)(6).

### A.   PLAINTIFFS SHOULD BE ORDERED TO ARBITRATE THEIR CLAIMS AGAINST PACELLA

The Federal Arbitration Act ("FAA") pronounces a liberal policy favoring enforcement of arbitration agreements. 9 U.S.C. § 1, *et seq*.; *AT&T Mobility, LLC v. Conception*, 131 S. Ct. 1740, 1745 (2011).   Under the FAA, "a written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of

such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Section 4 of the FAA specifically provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. § 4; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).  The Second Circuit Court of Appeals has explained that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we 'have often and emphatically applied.'" *Arciniaga v. General Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) (quoting *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 24 (2d Cir. 1995)).

In adjudicating motions to compel arbitration, a court must consider the following four factors:

> [F]irst, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Am. E Grp. LLC v. Livewire Ergogenics Inc*., 432 F. Supp. 3d 390, 397 (S.D.N.Y. 2020) (quoting *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)).  "The threshold question of whether the parties agreed to arbitrate is a matter of contract, determined by state law." *Doe #1 v. Coll. Bd.*, 440 F. Supp. 3d 349, 354-55 (S.D.N.Y. 2020).  "To decide whether the parties agreed to arbitrate a certain matter," "Delaware law instructs the court to give priority to the parties' intentions as reflected in the four comers of the agreement" and to consider whether the claims before the court "fall[] within the language of the arbitration agreement." *Yeransian v. Markel Corp.*, No. 16-808, 2017 WL 3225987, at *6, 8 (D. Del. July 31, 2017) (internal

quotation marks and citations omitted).[6]  "Any doubt as to arbitrability is to be resolved in favor

of arbitration." *SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1998).

As discussed below, each of the *JLM Industries* factors is satisfied, rendering arbitration

the only appropriate forum for Plaintiffs to pursue their fanciful claims against Pacella.

### 1.        A Valid Agreement to Arbitrate Exists, as Plaintiffs Recognize

Plaintiffs acknowledge that "[c]ertain of Pacella's contracts with [VP Management],

Ecogensus and [VP Energy Fuels] contain arbitration provisions" and that Plaintiffs already have

"commenced a AAA proceeding on or around October 23, 2019." (Compl. ¶ 130).  Indeed,

Section 11(n) of the Pacella Employment Agreement between VP Management and Pacella—

titled "Arbitration"—provides broadly that:

> [i]n the event of any controversy or dispute between [Pacella] and [VP
> Management] or its Subsidiaries or between [Pacella] and any Affiliate or an
> agent of [VP Management], including directors, officers, managers, other
> employees or members of the Company Group, who are being sued in any
> capacity, as to all or any part of this Agreement, any other agreement, any dispute
> or controversy whatsoever pertaining to or arising out of the relationship between
> [Pacella] and [VP Management] and/or the Company Group … shall, subject to
> [exceptions for injunctive relief], be resolved exclusively by binding arbitration
> … governed by the Federal Arbitration Act ….

(Ex. A at § 11(n)(i); *see also id.* at § 11(o)).

The foregoing disputes and controversies are defined as the "Arbitrable Disputes," (*id.* at

§ 11(n)(i)), which "shall include any and all disputes not specifically exempted from arbitration

herein [*i.e.*, injunctive relief, workers' compensation claims and unemployment insurance

claims], **including any alleged violations of federal[ or] state … statutes, laws … or common**

**law**, … any claims for breach of contract … and any disputes arising from, under or regarding

---

[6]        The Pacella Employment Agreement provides that "[t]he laws of the State of Delaware will
govern all other questions concerning the construction, validity and interpretation of this Agreement and
the exhibits hereto, without giving effect to any choice of law or conflict of law provision or rule (whether
of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any
jurisdiction other than the State of Delaware." (Ex. A at § 11(f)).

this Agreement …." (*Id*. at § 11(n)(ii) (emphasis added); *see also id*. at §§ 11(n)(iii), (o)). Further, in the "Dispute Resolution Addendum," attached as Exhibit B to the Pacella Employment Agreement, the parties further agreed that "[a]ll Arbitrable Disputes shall be resolved only by final and binding arbitration" and that "[t]he arbitrator, and not any federal[ or] state … court … shall have exclusive authority to determine the arbitrability of disputes of disputes …." (*Id*. at Ex. B §§ c, f). Thus, it is undisputed that a valid agreement exists to arbitrate each of the claims Plaintiffs pursue herein against Pacella.

### 2.   The Disputes at Issue Herein Fall Within the Scope of the Existing Arbitration Agreements

As described above, the Pacella Employment Agreement requires that all disputes among Plaintiffs and Pacella be brought and heard in arbitration governed by the FAA, with the sole, limited exception of claims for injunctive relief (*i.e.*, "a temporary restraining order, preliminary injunction or similar injunctive relief") and "claims arising from or related to workers' compensation and unemployment insurance," which are not sought in the Complaint. (Ex. A at §§ 11(n)(i), (n)(ii), (n)(iii), (o)). Accordingly, the second factor under the *JLM Industries* test warrants an Order compelling arbitration.

### 3.   Plaintiffs' Three Federal Statutory Claims Are Arbitrable

Plaintiffs have affixed the following labels to their three federal statutory claims: (i) an alleged violation of the Computer Fraud and Abuse Act (the "CFAA"), 18 U.S.C. § 1030, (¶¶ 132-39); (ii) the alleged commission of RICO activities, 18 U.S.C. § 1962(c), (¶¶ 140-55); and (iii) the alleged commission of a RICO conspiracy, 18 U.S.C. § 1962(d). (¶¶ 156-60). Claims under the CFAA are arbitrable. *See, e.g., Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 657 (S.D.N.Y. 2011). Likewise, "claims for violations of RICO are arbitrable." *Great Lengths Universal Hair Extensions S.r.L. v. Gold*, No. 16-193, 2017 WL 1731184, at *7 (S.D.N.Y. Mar.

14

29, 2017) (citing *Shearson/American Express v. McMahon*, 482 U.S. 220, 224 (1987)); *see also*

*Alghanim*, 828 F. Supp. 2d at 657 (same).  Thus, the third *JLM Industries* factor is satisfied.

### 4.      Staying Nonarbitrable Claims

"Because all of the … claims are arbitrable, it is not necessary to determine whether any

nonarbitrable claims should be stayed pending the outcome of the arbitration." *Martin v. SCI*

*Mgmt. L.P.*, 296 F. Supp. 2d 462, 467-68 (S.D.N.Y. 2003).

### 5.      Pacella Did Not Waive His Right to Arbitrate the Claims Against Him

Recognizing that they are required to arbitrate their claims against Pacella, Plaintiffs

allege that Pacella "failed and refused to proceed with arbitration despite due demand by Østvik

that he do so, thus waiving his rights, if any, to arbitrate." (Compl. ¶ 130).  Plaintiffs' "waiver"

theory is without merit.  As a general matter:

> waiver of the right to seek arbitration is considered against the well-established
> backdrop of the "emphatic federal policy in favor of arbitral dispute resolution."
> *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530, [533 (2012).]  The
> Second Circuit has repeatedly emphasized that "waiver of the right to arbitration
> is not to be lightly inferred." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310
> F.3d 102, 104-105 (2d Cir. 2002)….  As a result, "any doubts concerning whether
> there has been a waiver are resolved in favor of arbitration." *Katsoris v. WME*
> *IMG, LLC*, 237 F. Supp. 3d 92, 100-01 (S.D.N.Y. 2017)[.]
>
> To determine whether a party has waived its right to arbitration by
> expressing its intent to litigate the dispute in question, courts in the Second Circuit
> employ a three-factor analysis, examining "(1) the time elapsed from when
> litigation was commenced until the request for arbitration; (2) the amount of
> litigation to date, including motion practice and discovery; and (3) proof of
> prejudice." *Louisiana Stadium & Exposition District v. Merrill Lynch, Pierce,*
> *Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (quoting *Louis Dreyfus*
> *Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 229 (2d Cir.
> 2001)).  The Court analyzes these three factors … while taking account of the
> "national policy favoring arbitration[.]" *Southland Corp. v. Keating*, 465 U.S. 1,
> 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)[.]

*Chen-Oster v. Goldman, Sachs & Co.*, ___ F. Supp. 3d. ___, No. 10-6950, 2020 WL 1467182, at

*8 (S.D.N.Y. Mar. 26, 2020).  "Courts acknowledge that '[t]he key to a waiver analysis is

prejudice,'" *id*. at \*10 (quoting *Thyssen*, 310 F.3d at 105), and the party opposing arbitration carries the "heavy burden" of establishing waiver. *Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP*, 434 F. Supp. 2d 211, 218 (S.D.N.Y. 2006).

Pursuant to the foregoing standards, Plaintiffs cannot remotely demonstrate "waiver." This filing is Pacella's first before the Court and, therefore, little time has elapsed "from when the litigation was commenced until the [instant] request for arbitration." *Chen-Oster*, 2020 WL 1467182, at \*8.  Likewise, prior to this filing, Plaintiffs have not engaged Pacella in any litigation, save for the arbitration demand that Plaintiffs filed against Pacella, and no discovery has been taken. *See id*.  And, finally, Plaintiffs cannot possibly claim "prejudice" by seeking to resolve their disputes with Pacella in arbitration, which they agreed to do and already have commenced.  Thus, Pacella has not waived his rights to arbitrate, and the Court should dismiss Plaintiffs' claims against him and compel Plaintiffs to continue their disputes with arbitration.

**B.**    **ALTERNATIVELY, THE COURT SHOULD DISMISS PACELLA FROM THIS ACTION FOR LACK OF PERSONAL JURISDICTION AND DISMISS EACH COUNT OF THE COMPLAINT AGAINST PACELLA FOR FAILURE TO STATE A CLAIM**

**1.**    **The Court Lacks Personal Jurisdiction over Pacella**

In the alternative, dismissal is necessary because the Court lacks personal jurisdiction over Pacella and the other Defendants. Østvik alleges that Pacella "lives" and is "domiciled in the State of Pennsylvania, city of Pittsburgh." (¶¶ 21, 50).  Separately, Østvik makes reference to New York a scant three times in the Complaint.  First, there was some "meeting that took place in New York City on July 13, 2017." (¶ 62).  Second, on another occasion during their four-year history, Østvik and Pacella met "in New York City on April 5, 2018." (¶ 81).  Third, in July 2019, Østvik apparently was considering an "acquisition" in the "NYC-area," and Østvik suggests that the Edelson Defendants were interested in the anticipated transaction. (¶ 109).

These allegations are plainly insufficient to establish any Defendants' "minimum contacts" with the forum state; they neither establish that any Defendant "purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court" in New York, nor do these allegations establish that any Defendant "took intentional, and allegedly tortious, actions expressly aimed *at the forum*." *In re Platinum & Palladium Antitrust Litig.*, ___ F. Supp. 3d ___, No. 14-9391, 2020 WL 1503538, at *18 (S.D.N.Y. Mar. 29, 2020) (internal quotation marks and citations omitted).

Further, even if one dinner (or maybe two) in New York could satisfy the "minimum contacts" standard, the Court's exercise of personal jurisdiction over Pacella would be unreasonable. "Relevant considerations include: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Fica Frio, Ltd. v. Seinfeld*, 434 F. Supp. 3d 80, 94 (S.D.N.Y. 2020). Each of these factors weigh in favor of dismissing Pacella pursuant Rule 12(b)(2) for lack of personal jurisdiction over him.[7]

### 2.     The Court Should Dismiss Each Count for Failure to State a Claim

Even if the Court were to reach a consideration of the adequacy of the pleadings themselves, none withstand scrutiny. Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and,

---

[7]     Although Østvik brings RICO claims, *see infra* at 18, and although RICO "defendants may be subject to nationwide personal jurisdiction," "minimum contacts" with the forum state must be established "as to at least one defendant" for nationwide personal jurisdiction to be viable. *Fire & Police Pension Ass'n of Colorado v. Bank of Montreal*, 368 F. Supp. 3d 681, 694 (S.D.N.Y. 2019) (internal quotation marks and citations omitted). Here, because the Court cannot exercise personal jurisdiction over any Defendants, the RICO claims in this case do not establish personal jurisdiction over Pacella.

therefore, the complaint "must provide more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or simply present "labels and conclusions or a formulaic recitation of the elements of a cause of action …." *Gifford v. United N. Mortg. Bankers, Ltd.*, No. 18-6324, 2019 WL 3685225, at *4 (S.D.N.Y. July 8, 2019) (internal quotation marks and citations omitted). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194 (2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Instead, the complaint must state "plausible" claims for relief—*i.e.*, "the complaint must demonstrate more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citations omitted).  None of Østvik's claims satisfy these standards.

### a.  The RICO Claims (Counts 2 & 3) Should be Dismissed

In Count 2 of the Complaint, Østvik pursues a claim against each Defendant for allegedly engaging in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).  In Count 3 of the Complaint, Østvik pursues a claim against each Defendant for allegedly engaging in a RICO conspiracy in violation of 18 U.S.C. § 1962(d).  To sustain a RICO claim under Section 1962(c), a plaintiff must demonstrate, among other things, that *each* defendant engaged in "a pattern … of racketeering activity" and participated in "an enterprise …." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123-24 (2d Cir. 2018) (internal quotation marks and citation omitted)).  If Østvik cannot state a claim under Section 1962(c), his RICO "conspiracy" claim under Section 1962(d) also fails.  *See id.* at 126.  For at least four reasons, Østvik cannot state a claim under Section 1962(c)—and, therefore, he cannot state a claim under 1962(d).

*First*, Østvik alleges nothing more than "an ordinary business dispute" for which RICO does not provide a remedy. *Watral v. Silvernails Farm LLC.*, 51 F. App'x 62, 66 (2d Cir. 2002);

*see also, e.g., Foster v. Wintergreen Real Estate Co.*, 363 F. App'x 269, 274 (4th Cir. 2010) (explaining that "this circuit will not lightly permit ordinary business … disputes to be transformed into federal RICO claims" because "every such dispute [would constitute] a cause of action under RICO") (internal quotation marks and citations omitted); *Atl. Gypsum Co. v. Lloyds Int'l Corp.*, 753 F. Supp. 505, 507 (S.D.N.Y. 1990) (dismissing RICO claims where plaintiff "infused" an "ordinary business dispute with overtones of criminality by invoking [RICO]"). Here, Østvik is using this lawsuit to address ordinary business disputes. Østvik admits that Pacella worked for the Companies in exchange for compensation, (¶¶ 39, 43), and that Melnik made a loan to Ecogensus expecting a repayment. (¶¶ 53, 55, 60, 100). Østvik may not believe that he owes any debts to Pacella and Melnik, but this is a classic business dispute nonetheless.

**Second**, Østvik cannot come close to establishing that Defendants engaged in a "pattern of racketeering activity." To establish a "pattern of racketeering activity," a plaintiff must "adequately plead the *continuity* requisite," which "can be proven in two different ways: closed-ended continuity, and open-ended continuity." *Williams v. Equitable Acceptance Corp.*, ___ F. Supp. 3d. ___, No. 18-7537, 2020 WL 1181734, at *10 (S.D.N.Y. Mar. 11, 2020) (emphasis added) (internal quotation marks and citation omitted). "A closed-ended pattern of racketeering activity involves predicate acts extending over a substantial period of time" and, "[i]n this Circuit, a pattern should generally extend over at least two years to establish closed-ended continuity." *Id*. (internal quotation marks and citations omitted). Here, Østvik cannot demonstrate "close-ended continuity" because he admits that the alleged wrongful activity took place "in the spring and summer of 2019," (¶ 8; ¶¶ 1, 9, 99), which corresponds to when Pacella first made a request (in August 2019) for payments that Østvik viewed as "extortion." (¶ 112). Then, on behalf of Pacella and Melnik, the Edelson Defendants sent Østvik "demand letter[s]" in

19

September 2019, November 2019 and March 2020. (¶¶ 120, 128-29).  Less than two years earlier, in April 2018, Østvik paid Pacella $228,000, (¶ 93), which Østvik now claims was "extract[ed] … by extortion." (¶ 152).  Regardless, the alleged predicate acts took place within less than two years.[8]

Nor can Østvik demonstrate "open-ended continuity," which requires a showing that "the alleged scheme by its nature projects into the future with a threat of repetition." *Equitable Acceptance Corp.*, 2020 WL 1181734, at *10 (internal quotation marks omitted).  Even if Defendants' demands for payment of debts—on account of services performed and money loaned—constituted a scheme to extort Østvik, that scheme ended in March 2020. (¶ 129).  And, in any event, a "discrete and relatively short-lived scheme to defraud a handful of victims through racketeering activity" is "insufficient to support open-ended continuity." *Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, No. 14-7349, 2016 WL 1298987, at *12 (S.D.N.Y. Mar. 31, 2016) (internal quotation marks and citation omitted).  Under the circumstances, Østvik cannot establish the "continuity" requisite of a "pattern of racketeering activity" and, therefore, Østvik cannot a state a claim under Section 1962(c).

***Third***, Østvik also cannot demonstrate a "pattern of racketeering activity" because "RICO does not apply to isolated or sporadic criminal acts …."  *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017) (internal quotation marks and citation omitted).  Although Østvik twice uses the word "defraud," (¶¶ 144, 146), and claims that Defendants engaged in predicate acts of "mail fraud" and "wire fraud," (¶¶ 148-49), Østvik does not allege that any Defendant *misrepresented*

---

[8]     Moreover, Østvik essentially concedes that there was no "extortion" in 2019.  First, Østvik's theory is that Defendants threatened to reveal the Confidential Disclosures if Østvik did not pay his debts to Pacella and Melnik; but Østvik concedes that the Edelson Defendants *stated in writing* that "Pacella would not reveal" any of the Confidential Disclosures or otherwise "make [them] public" and that any court filing would "redact sensitive information." (¶ 125).  Second, "frivolous, fraudulent, [and] baseless litigation activities" do not "constitute a RICO predicate act." *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018).  Thus, Østvik identifies only one instance in which alleged extortion took place: in April 2018.

the truth of anything to him at any time.  The only predicate act that Østvik even attempts to

establish is "extortion."  But one purported act of extortion in April 2018 (by Pacella only),

(¶ 93), and a second purported act in 2019 (by Defendants to obtain debts owed to Pacella and

Melnik), (¶¶ 120, 128-29), are "isolated and sporadic" events that cannot constitute a "pattern."

*Fourth*, Østvik cannot establish that Defendants were engaged in an "enterprise," which

requires a showing that *each* of the individual members "'share a common purpose to engage in

a particular fraudulent course of conduct and work together to achieve such purposes.'" *Cruz v.

FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quoting *First Capital Asset Mgmt., Inc.

v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004)) (quotation marks omitted).  Here, however,

Østvik alleges that (i) Pacella has been seeking amounts due to Pacella on account of his

relationship with the Companies, (*see generally* Compl.), *whereas* (ii) Melnik has been seeking

repayment due to Melnik under the Melnik-Ecogensus Loan (¶¶ 53, 60, 100 120, 129), *whereas*

(iii) the Edelson Defendants merely have been representing Pacella and Melnik as counsel. (¶¶

120, 128-29). *See LCS Grp., LLC v. Shire LLC*, No. 18-2688, 2019 WL 1234848, at \*11

(S.D.N.Y. Mar. 8, 2019) (explaining that attorneys working on behalf of clients cannot create a

RICO enterprise).

### b. The CFAA Claim (Count 1) Should be Dismissed

In Count 1 of his Complaint, Østvik pursues a claim against Pacella, Melnik and Edelson

for a violation of the Computer Fraud and Abuse Act, 11 U.S.C. § 1030. (¶¶ 132-39).  Tracing

the elements of a claim under the CFAA, Østvik merely asserts that Pacella "obtained

information from Plaintiff's protected computer system," (¶ 134), "knowingly and with intent to

defraud," (¶ 135), and "with the knowledge and participation of … Edelson and Melnik," (¶

137), and that he has suffered "damage and loss that exceeds $5,000." (¶ 138).   These

"defendant-unlawfully-harmed-me accusation[s]" are simply "a formulaic recitation of the elements of a cause of action," *Gifford*, 2019 WL 3685225, at *4, and, therefore, the Court should dismiss Count 1 pursuant to Rule 12(b)(6).

### c.   The Extortion Claim (Count 4) Should be Dismissed

In Count 4 of his Complaint, Østvik pursues a claim against Pacella and Edelson for "extortion." (¶¶ 161-70).  There is no private right of action for "extortion" and, therefore, the Court should dismiss Count 4 pursuant to Rule 12(b)(6). *See, e.g., Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 713 (2d Cir. 2019) (affirming the dismissal of "extortion" claims because "[p]laintiffs have not identified a private cause of action under either federal or state law, and the Court is not aware of one").

### d.   The Misappropriation Claim (Count 7) Should be Dismissed

In Count 7 of his Complaint, Østvik pursues a claim against each Defendant for "misappropriation of trade secrets." (¶¶ 185-91).  Tellingly, Østvik never once uses the phrase "trade secret(s)" until Count 7 and, even there, he fails to allege (i) what trade secrets existed, if any, (ii) how they were misappropriated, if at all, (iii) to whom they were disclosed, if to anyone, and (iv) how he and his Companies have been damaged "in excess of $40,000,000." (¶ 189). Østvik, however, does take the time to characterize vaguely-alleged activity as "malicious, wanton[ and] outrageous" to support his claim for punitive damages "in excess of $100,000,000 …." (¶ 191).

Courts have not hesitated to dismiss trade-secret misappropriation claims when, as here, the plaintiffs fail to allege anything of substance to support their claims. *See, e.g., MHS Capital LLC v. Goggin*, No. 2017-0449, 2018 WL 2149718, at *14 (Del. Ch. May 10, 2018) (dismissing trade-secret misappropriation claim supported only by "conclusory allegations without specific

supporting factual allegations"); *Mastercraft Decorators, Inc. v. Orlando*, 356 F. Supp. 3d 259, 270 (W.D.N.Y. 2018) (dismissing trade-secret misappropriation claim as "vague" and "conclusory" and explaining that, "[a]lthough a plaintiff need not disclose its secrets in order to state a claim, it must allege facts sufficient to show that the information in fact is secret") (internal quotation marks and citation omitted).   Moreover, to state a claim for "misappropriation," Østvik is required to demonstrate, among other things, that Pacella "[u]sed improper means to acquire knowledge of the trade secret …." *BrandRep, LLC v. Ruskey*, No. 2018-0541, 2019 WL 117768, at *7 (Del. Ch. Jan. 7, 2019).   Here, Østvik alleges that Pacella has worked for one or more the Companies since 2016, and that he served as an officer of, and co-general counsel for, Ecogensus and VP Energy Fuels. (¶ 39).  The Complaint does not contain allegations adequate to show that Pacella misappropriated anything.  The Court should dismiss Count 7 of the Complaint pursuant to Rule 12(b)(6) for failure to state a claim.

### e.     The Breach of Contract Claim (Count 5) Should be Dismissed

In Count 5 of his Complaint, Østvik pursues a claim against Pacella for breach of contract. (¶¶ 171-79).  In the same he approach he took with his trade-secret misappropriation claim, Østvik offers threadbare allegations that Pacella "breached and continues to breach" "the terms of a non-solicitation, confidentiality and intellectual property agreement" "with Plaintiffs." (¶¶ 172, 174).   From there, he alleges that Pacella breached the agreement by "misappropriat[ing] confidential information and contact[ing] Plaintiffs' [i]nvestors, Board Members and [o]utside lawyers," (¶ 176), and "wrongfully access[ing] Plaintiffs' computers to extract non-public information to use for his own personal gain." (¶ 177).  As described above in respect of Count 7, Østvik has failed to state a claim against Pacella for "misappropriation" of anything.  And Østvik's allegations concerning wrongful computer access fare no better; the

Complaint says nothing about (i) what Pacella allegedly accessed, (ii) how his alleged access could have been "wrongful" or how Pacella used or "gain[ed]" from whatever (unidentified) information Pacella allegedly accessed, or (iii) how Østvik was injured.  The Court should dismiss Count 5 of the Complaint pursuant to Rule 12(b)(6) for failure to state claim.

**f.**      **The Breach of Fiduciary Duty Claim (Count 9) Should be Dismissed**

In Count 9 of his Complaint, Østvik pursues a claim against Pacella for "breaches of fiduciary duty." (¶¶ 201-10).  As Count 9 represents a copy-and-paste presentation of vague and conclusory allegations borrowed from Count 5 and Count 7, Østvik's breach of fiduciary duty claim also fails.  Count 9 is based upon Pacella's requests and efforts to obtain debts owed by Østvik—*i.e.*, "demanding a cash payout" and "equity interests in Ecogensus and [VP Energy Fuels]," (¶ 208)—and alleged communications with "Board Members, [i]nvestors and [o]utside [c]ounsel …." (¶ 209).  Interestingly, for all of Østvik's gripes about Pacella's efforts to obtain payment and Pacella's alleged communications with individuals that have a relationship with the Companies, Østvik acknowledges that Pacella served "as General Counsel the [Companies]" as "in-house counsel during [his] … employment, and as outside counsel before and after the term of his employment agreement." (¶ 202; ¶ 39).  In light of Pacella's role in, and position with, the Companies, Østvik fails to allege how Pacella breached any duties; doing one's job and requesting payment for the effort does not constitute a breach of anything, including fiduciary duties.  The Court should dismiss Count 9 pursuant to Rule 12(b)(6) for failure to state a claim.

**3.**      **The Court Should Dismiss the State Law Claims**

Although Østvik asserts that "[t]he Court has [diversity] jurisdiction pursuant to 28 U.S.C. § 1332," (¶ 27), Pacella is a member of Plaintiffs Ecogensus and VP Energy Fuels, (Ex. B; Ex. C), and "'[a] limited liability company … takes the citizenship of each of its

24

members' for diversity purposes." *Lesser v. TD Bank, N.A.*, No. 18-9922, 2020 WL 2787645, at *1 (S.D.N.Y. May 28, 2020) (quoting *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012)).  Here, two Plaintiffs are suing one of their members and, therefore, the Court does not have diversity jurisdiction over the claims in this case.

If the Court dismisses Counts 1, 2 and 3 (the only federal claims in this case), the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. *See Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 446 (S.D.N.Y. 2019) (explaining that, when "federal claims are eliminated in the early stages of litigation, the Second Circuit has instructed that district courts generally should decline to exercise supplemental jurisdiction over remaining state law claims").   In determining whether to exercise supplemental jurisdiction, court are "guided by values of judicial economy, convenience, fairness, and comity …." *Id*. None of these factors favor the exercise of supplemental jurisdiction over the remaining state law claims in this case.

## V.       CONCLUSION

The Court should grant Pacella's motion to compel Plaintiffs to arbitrate their claims against him, pursuant to the FAA and the arbitration provisions of the Pacella Employment Agreement.   Indeed, "Østvik and [his C]ompanies" already have "commenced a AAA proceeding" against Pacella pursuant to those "arbitration provisions." (¶ 130).  Alternatively, the Court should dismiss Pacella from this action pursuant to Rule 12(b)(2) for lack of personal jurisdiction over him.  The Court also should dismiss each of the claims against Pacella pursuant to Rules 9(b) and 12(b)(6) for failure to state a claim.  Finally, at a minimum, if the Court dismisses the federal-question claims in this case (Counts 1, 2 and 3), the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

25

Dated:  Wilmington, Delaware            Respectfully submitted,
        July 31, 2020

WHITEFORD TAYLOR & PRESTON, LLP

By:   /s/ Kaan Ekiner
       Kaan Ekiner
       The Renaissance Centre, Suite 500
       405 North King Street
       Wilmington, Delaware 19801-3700
       Phone:     (302) 357-3262
       Fax:        (302) 357-3284
       E-mail:     kekiner@wtplaw.com

          - and -

       Scott M. Hare (*pro hac vice adm. pending*)
       200 First Avenue, 3rd Floor
       Pittsburgh, Pennsylvania 15222
       Phone:     (412) 275-2399
       Fax:        (412) 275-2406
       E-mail:     share@wtplaw.com

          - and -

       Todd M. Brooks (*admitted pro hac vice*)
       Seven Saint Paul Street, 15th Floor
       Baltimore, Maryland 21202
       Phone:     (410) 347-9421
       Fax:        (410) 234-2318
       E-mail:     tbrooks@wtplaw.com

          - and -

WOODROW & PELUSO, LLC

       Patrick Harry Peluso (*admitted pro hac vice*)
       Steven L. Woodrow
       3900 E Mexico Avenue, Suite 300
       Denver, Colorado 80210
       Phone:     (720)-213-0676
       Emails:     ppeluso@woodrowpeluso.com
                    swoodrow@woodrowpeluso.com

*Counsel for Defendant Matthew Pacella*

26

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 31, 2020, a true and correct copy of the foregoing *Memorandum of Law in Support of Defendant Pacella's Motion to Compel Arbitration or, in the Alternative, Dismiss the Complaint* and all attachments thereto were served by the Court's Electronic Case Filing System, and further by electronic mail and first class mail, postage prepaid, at the addresses set forth below:

| | |
|---|---|
| Debra Joy Guzov | Ryan D. Andrews |
| Anne W. Salisbury | Alexander G. Tievsky |
| David J. Kaplan | EDELSON PC |
| GUZOV LLC | 350 North LaSalle Street, 14th Floor |
| 805 Third Avenue, 8th Floor | Chicago, Illinois 60654 |
| New York, NY 10022 | randrews@edelson.com |
| dguzov@guzovllc.com | atievsky@edelson.com |
| asalisbury@guzovllc.com | |
| dkaplan@guzovllc.com | |
| | |
| *Counsel for Plaintiffs* | *Counsel for Defendants Edelson PC, Benjamin Richman and Jay Edelson* |

Dated: Wilmington, Delaware
      July 31, 2020            By:    /s/ Kaan Ekiner          
                                                Kaan Ekiner