UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ECOGENSUS LLC, VIKINGPEAK ENERGY FUELS
LLC, VIKINGPEAK MANAGEMENT COMPANY,
LLC., VIKINGPEAK CAPITAL GROUP LLC and
BJØRNULF ØSTVIK,                                    Civ.: 1:20-cv-3629

                            Plaintiffs,

                  -against-

MATTHEW PACELLA, MICHAEL M. MELNIK,
JAY EDELSON, BENJAMIN RICHMAN and
EDELSON PC.
                            Defendants.
-------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
MATTHEW PACELLA'S MOTION TO COMPEL ARBITRATION OR
ALTERNATIVELY TO DISMISS THE COMPLAINT**

GUZOV, LLC
Debra J. Guzov, Esq.
David J. Kaplan, Esq
Anne W. Salisbury, Esq.
805 Third Avenue, 8th Floor
New York, NY 10022
Tel.:   (212) 371-8008
dguzov@guzovllc.com
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 2

ARGUMENT .......................................................................................................... 5

I.   STANDARD OF REVIEW ............................................................................ 5

II.  PACELLA CANNOT COMPEL ARBITRATION OR STAY THE PROCEEDINGS.. 6

  A.  PACELLA PURPOSEFULLY AND UNEQUIVOCALLY WAIVED THE RIGHT TO

  ARBITRATE ....................................................................................................... 7

III. THIS COURT HAS PERSONAL JURISDICTION OVER PACELLA ...................... 12

IV.  THE FIRST AMENDED COMPLAINT PLEADS ACTIONABLE CLAIMS IN ALL

OF THEIR ELEMENTS ........................................................................................... 13

  A.  The RICO Elements are Sufficiently Pled ................................................... 13

  B.  The CFAA Claim is Sufficiently Pled ......................................................... 15

  C.  The Prima Facie Tort Claim is Sufficiently Pled ........................................ 17

  D.  The Breach of Contract Claim is Sufficiently Pled ..................................... 19

  E.  The Fiduciary Duty Claim is Sufficiently Pled ........................................... 20

  F.  Aiding and Abetting Claim is Sufficiently Pled ........................................... 21

  G.  The Conspiracy Claim is Sufficiently Pled .................................................. 23

V.   THE COURT HAS ORIGINAL JURISDICTION AND SUPPLEMENTAL

JURISDICTION OVER PLAINTIFFS' S FEDERAL AND STATE LAW CLAIMS

   AGAINST PACELLA ........................................................................................................... 24

CONCLUSION........................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Advance Music Corp. v. American Tobacco Co.,*
296 N.Y. 79 N.E.2d 401 ................................................................................................ 17

*Advanced Aerofoil Techs., AG v. Todaro,*
No. 11 CIV. 9505 ALC DCF, 2013 WL 410873 (S.D.N.Y. Jan. 30, 2013)................................ 24

*American Guild of Musical Artists v. Petrillo,*
286 N.Y. 226, 36 N.E.2d 123 ........................................................................................ 17

*Anderson News, L.L.C. v. American Media, Inc.,*
680 F.3d at 184 .......................................................................................................... 23

*Apple & Eve, LLC v. Yantai N. Andrew Juice Co.,*
610 F. Supp. 2d 226 (E.D.N.Y. 2009.) ............................................................................ 8

*Arciniaga v. General Motors Corp.,*
460 F.3d 231 (2d Cir. 2006)........................................................................................... 6

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...................................................................................................... 5

*Baker & Taylor, Inc. v. AlohaCraze.Com Corp.,*
602 F.3d 486 (2d Cir. 2010)........................................................................................ 7, 8

*Bangladesh Bank v. Rizal Commercial Banking Corp.,*
No. 19 CIV. 983 (LGS), 2020 WL 1322275 (S.D.N.Y. Mar. 20, 2020) ................................... 24

*Bank Brussells Lambert v. Credit Lyonnais (Suisse),*
220 F. Supp. 2d 283 (S.D.N.Y. 2002)............................................................................. 20

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 545-46 (2007) .................................................................................. 5, 6, 7

*Board of Educ. v. Farmingdale Classroom Teachers Assn.,*
38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 ............................................................ 18

*Bos. Consulting Grp., Inc. v. NCR Corporation,*
2020 WL 5731963 ...................................................................................................... 22

*Boyle v. United States,*
556 U.S. 938 (2009).................................................................................................... 15

iii

*Brookridge Funding Corp. v. Nw. Human Resources, Inc.,*
170 Fed. Appx. 170 (2d Cir. 2006) ............................................................ 7, 8

*Brown v. Dillard's, Inc.,*
430 F.3d 1004 (9th Cir. 2005) ........................................................................ 11

*Cornell & Co. v. Barber & Ross Co.,*
360 F.2d 512 (D.C. Cir. 1966) ........................................................................ 10

*Curiano v. Suozzi,*
63 N.Y.2d 113, 469 N.E.2d 1324 (1984) ...................................................... 18

*Doctor's Assoc., Inc. v. Distajo,*
66 F.3d 438 (2d Cir. 1995) ........................................................................ 7, 10

*Doe v. Trump Corp.,*
453 F. Supp. 3d 634 (S.D.N.Y. 2020) .............................................................. 2

*Eliahu v. Jewish Agency for Israel,*
919 F.3d 709 (2d Cir. 2019) ............................................................................ 18

*Farr Whitlock Dixon & Co. v. S.S. Gen. Tsakalotos,*
244 F. Supp. 544 (S.D.N.Y. 1965) .................................................................... 7

*GICC Capital Corp. v. Tech. Fin. Group, Inc.,*
67 F.3d 463 (2d Cir. 2995) .............................................................................. 14

*Gifford v. United N. Mortg. Bankers, Ltd.,*
No. 18-6324, 2019 WL 3685225 (S.D.N.Y. July 8, 2019) ...................... 20, 22

*Hishon v. King & Spalding,*
467 U.S. 69 (1984) ............................................................................................ 6

*Howsam v. Dean Witter Reynolds, Inc.,*
537 U.S. 79 (2002) ............................................................................................ 7

*Hudson Global Res. Holdings, Inc. v. Hill,*
No. 02:07cv0132, 2007 WL 1545678 (W.D. Pa. May 25, 2007) .................. 17

*I.M.S. Inquiry Mgmt. Sys. v. Berkshire Info. Sys. Inc.,* 307
F.Supp.2d 521 (S.D.N.Y. 2004) ...................................................................... 16

*In Calyon v. Mizuho Sec. USA, Inc.,*
No. 07 Civ.2241(RO), 2007 WL 2618658 (S.D.N.Y. July 24, 2007) .......... 16

*In re Agent Orange Prod. Liab. Litig.*,
800 F.2d 14 (2d Cir. 1986)............................................................................................ 20

*In re Platinum & Palladium Antitrust Litig.*,
449 F. Supp. 3d 290 (S.D.N.Y. 2020)............................................................................ 12

*In Re Tyco Int'l Ltd. Sec. Litig.*,
422 F.3d 41 (1st Cir. 2005).................................................................................. 9, 10, 11

*Int'l Sec. Mgmt. Group, Inc. v. Sawyer,*
No. 3:06cv0456, 2006 WL 1638537 (M.D. Tenn. June 6, 2006)................................... 17

*Johnson v. Nextel Commc'ns, Inc.*,
660 F.3d 131 (2d Cir. 2011)........................................................................................... 21

*Kaufman v. Cohen*,
307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003) ................................................... 21

*Kreutter v. McFadden Oil Corp.*,
71 N.Y.2d 460, 527 N.Y.S.2d 195 (1988) .................................................................... 12

*Kruse v. Repp*,
2020 WL 1317479 (S.D. Iowa 2020)............................................................................. 15

*La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
626 F3d at 159–61 ........................................................................................................... 7

*Lane Ltd. v. Larus & Brother Co*.,
243 F.2d 364 (2d. Cir. 1957).............................................................................. 7, 8, 9, 10

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)........................................................................................... 21

*LG Electronics, Inc. v. Wi–Lan USA, Inc.,*
623 Fed. Appx. 568 (2d. Cir. 2015) ................................................................................ 7

*Lightbox Ventures, LLC v. 3rd Home Ltd.*,
No. 16 Civ. 2379, 2017 WL 5312187 (S.D.N.Y. Nov. 13, 2017) ................................. 21

*Litvinoff v. Wright*,
150 A.D.3d 714, 54 N.Y.S.3d 22 (2017) .................................................................. 21, 23

*LivePerson, Inc.*,
83 F. Supp. 3d at 516 ..................................................................................................... 22

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,*

252 F.3d 218 (2d Cir. 2001) ................................................................................................ 8

*Marino v. Grupo Mundial Tenedora, S.A.,*
810 F. Supp. 2d 601 (S.D.N.Y. 2011) ................................................................................. 22

*Mayfield v. Asta Funding, Inc.,*
95 F.Supp.3d 685 (S.D.N.Y. 2015) ..................................................................................... 15

*McCarthy v. Dun & Bradstreet Corp.,*
482 F. 3d 184 (2d Cir. 2007.) ................................................................................................ 6

*McGowan v. Smith,*
52 N.Y.2d 268, 437 N.Y.S.2d 643 (1981) ........................................................................... 12

*Minnelli v. Soumayah,*
41 A.D.3d 388, 839 N.Y.S.2d 727 (1st Dep't 2007) ............................................................ 19

*Mintel Int'l Group, Ltd. v. Neergheen,*
No. 08-CV-3939, 2008 WL 2782818 (N.D. Ill. July 16, 2008) ........................................... 16

*Montefiore Med. Ctr. v. Teamsters Local 272,*
642 F.3d 321 (2d Cir. 2011) ............................................................................................... 25

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC,*
709 F.3d 109 (2d Cir.2013) ................................................................................................... 6

*Nicosia v. Amazon.com, Inc.,*
834 F.3d 220 (2d Cir. 2016) ................................................................................................. 2

*O.J. Distrib., Inc. v. Hornell Brewing Co., Inc.,*
340 F.3d at 357–59 ................................................................................................................ 9

*Opera on Tour v. Weber,*
285 N.Y. 348, 34 N.E.2d 349, cert. den. 314 U.S. 615, 62 S.Ct. 96, 86 L.Ed. 495 .................... 17

*Pension Ben. Guar. Corp. ex rel, St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.,*
712 F.3d 705 (2d Cir. 2013) .................................................................................................. 5

*Pharmerica, Inc. v. Arledge,*
No. 8:07-CV-486-T-26MAP, 2007 WL 865510 (M.D. Fla. Mar. 21, 2007) ............................. 17

*Ridge at Red Hawk, LLC v. Schneider,*
493 F.3d 1174 (10th Cir. 2007) ............................................................................................. 5

*Ruotolo v. City of N.Y.*,
514 F.3d 184 (2d Cir. 2008).................................................................................. 5

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
624 F.3d 123 (2d Cir. 2010).................................................................................. 24

*Schreiber v. Friedman*,
2017 WL 5564114 (E.D.N.Y).............................................................................. 11

*Skinner v. Switzer*,
131 S. Ct. 1280 (2011)........................................................................................... 5

*Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*,
366 F. Supp. 3d 516 (S.D.N.Y. 2018).................................................................. 13

*Spano v. V & J Nat'l Enterprises, LLC*
264 F. Supp. 3d 440 (W.D.N.Y. 2017)................................................................. 11

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002)............................................................................................... 5

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
310 F.3d at 105 ...................................................................................................... 10

*Univ. Sports Pub. Co. v. Playmakers Media Co.*,
725 F.Supp.2d 378 (S.D.N.Y. 2010).................................................................... 16

*Zhang v. Wane*,
317 Fed.Appx. 26 (2d Cir.2008)............................................................................ 8

## Statutes

C.P.L.R. § 302(a)(1) ............................................................................................. 12

C.P.L.R. § 302(a)(2) ............................................................................................. 12

18 U.S.C. § 1030 (2009) ....................................................................................... 24

18 U.S.C. § 1030(a)(4) .......................................................................................... 16

18 U.S.C. § 1030(a)(5)(C) ..................................................................................... 15

18 U.S.C. § 1030(e)(8) .......................................................................................... 16

18 U.S.C. § 1962(b) .............................................................................................. 13

18 U.S.C. § 1962(c) ........................................................................................................... 24

18 U.S.C. § 1965(a) ........................................................................................................... 1

28 U.S.C. § 1331 ............................................................................................................... 24

28 U.S.C. § 1367(a) ........................................................................................................... 25

9 U.S.C. § 1 ....................................................................................................................... 1

**Rules**

Fed. R. Civ. P. Rule 12(b)(1) ............................................................................................. 1

Fed. R. Civ. P. Rule 12(b)(2) ............................................................................................. 1

Fed. R. Civ. P. Rule 12(b)(6) ............................................................................................. 1, 5

Fed. R. Civ. P. Rule 9(b) ................................................................................................... 1

Plaintiffs Ecogensus, LLC ("Ecogensus"), VikingPeak Energy Fuels LLC, VikingPeak Management Company, LLC, VikingPeak Capital Group LLC and Bjørnulf Østvik ("Østvik") (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to the motion of defendant Matthew Pacella ("Pacella") to compel arbitration or, alternatively, to stay this action pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. and, alternatively, to dismiss the claims interposed against Pacella in Plaintiffs' First Amended Complaint, dated August 26, 2020 (cited to herein as "Complaint" or "Compl.") pursuant to Rules 9(b) and 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.).

## PRELIMINARY STATEMENT

Pacella's late-hour demand for this case to be sent to arbitration demonstrates an intentional pattern of gamesmanship and delay—rather than a willingness to arbitrate this dispute, as he now contends. After deflecting, delaying and then outright refusing to arbitrate, Pacella is suddenly desirous of this choice of tribunal. This Court should hold Pacella to his waiver and decline to compel arbitration.

 Alternatively, Pacella also attempts to persuade this Court that it lacks personal jurisdiction over him, but ignores the salient and dispositive fact that he committed tortious acts that lie at the heart of this lawsuit within the State of New York directed at Plaintiffs within this State. Such contacts clearly supply this Court with personal jurisdiction over Pacella.

Pacella argues that the Complaint fails to state a cause of action, even though the well-pleaded allegations of the Complaint sufficiently support Plaintiffs' claims against Pacella for Civil RICO under 18 U.S.C. § 1965(a), prima facie tort under New York State Law, breach of contract, breach of fiduciary duty and conspiracy to commit intentional torts.

Finally, Pacella's arguments concerning subject matter jurisdiction must fail given the

1

Court's supplemental jurisdiction to hear Plaintiffs' state law claims against Pacella which "form part of the same case or controversy" as Plaintiffs' claims under federal law.

## STATEMENT OF FACTS

For the sake of brevity, Plaintiffs respectfully refer the Court to the First Amended Complaint dated August 26, 2020 (the "Compl.") and the accompanying Declaration of Bjornulf Østvik sworn to on November 20, 2020 ( "Østvik Decl.") for a more detailed recitation of the facts pertaining to this Opposition.[1]

In Pacella's motion to dismiss, presumably to circumvent the requirement that his grounds for dismissal be aimed solely at the pleadings, not extrinsic facts, Pacella's narrative contains citations to paragraphs in the Complaint. However, upon examination, his characterizations do not match the cited paragraphs, sometimes in significant ways. For example, Pacella states that he assisted Plaintiffs in "identifying and retaining outside counsel for Plaintiffs' "legal needs" and cites to Compl. ¶ 42, which actually alleges he advanced his friends' needs in a conflict of interest with his employer. Similarly, Pacella characterizes various allegations against him as claims involving him "seeking additional compensation" citing to paragraphs 57, 58 and 73 of the Complaint, when in fact, these paragraphs detail Pacella's unlawful, extortionate demands, not the palatable-sounding "compensation" negotiations. All in all, despite Pacella's distortions, it is clear the Complaint details more than sufficient factual support for its claims.

To summarize, as alleged in the Complaint and in the Østvik Decl., Pacella signed an offer letter on August 6, 2016 (effective date August 1, 2016) and began his employment for Østvik

---

[1] Extrinsic evidence of waiver is appropriately submitted when opposing a motion to compel arbitration. Courts must consider "all relevant, admissible evidence submitted by the parties" and must "draw all reasonable inferences in favor of the non-moving party." *Doe v. Trump Corp.*, 453 F. Supp. 3d 634, 638–39 (S.D.N.Y. 2020); *citing Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 229 (2d Cir. 2016).

and VPM as a remote employee, also serving as "Vice President and Co-General Counsel" for Ecogensus and VPEF. Østvik Decl. ¶4. A true and correct copy of this letter is attached to the Østvik Decl. as Exhibit A.[2] The Complaint recounts the deterioration of Pacella's professional performance, the multiple breaches of his professional and fiduciary and the out-and-out acts of extortion that ensued. See, *inter alia,* Compl. ¶ 83-84, 118-119, 129, 148-159.

From the end of August through October 21, 2019, Plaintiffs attempted (through numerous teleconferences and letter exchanges between the parties' respective lawyers) to reach a resolution, but the matter only escalated, as detailed in the Amended Complaint. Østvik Decl. ¶8. Seeking to resolve disputes in the discrete and efficient way provided for in the Employment Agreement, on October 21, 2019, Plaintiffs served a Demand for Arbitration on Defendant Pacella. Plaintiffs invoked the arbitration clause contained in the Employment Agreement. Compl. ¶ 32. Østvik Decl. ¶9, Ex. C. The demand alleged multiple breaches of Pacella's fiduciary duties owed to the Plaintiffs, breaches of Pacella's contractual obligations and tortious interference with current and prospective business relationships under applicable law. *Id.* No demand was made concerning the conspiracy and extortion scheme that lies at the heart of this case, and no demand was made upon any of the other Defendants (nor could it have been, given ) Compl. ¶ 33. Østvik Decl. Ex. C.

Pacella and his counsel (the Edelson Defendants) neither entered an appearance nor filed an answer or response to the demand for arbitration nor filed their own arbitration. Østvik Decl.

---

[2] Pacella drafted an engagement letter in April 2018 related to legal services provided to Østvik personally as well as VPCG, backdated with an effective date of August 1, 2016. He sent this agreement along with an "invoice" for what he falsely labeled retroactive fees. Østvik Decl. ¶5. This legal services agreement did not contain an arbitration clause. A true and correct copy of that letter (with the invoice) is attached to the Østvik Decl. as Exhibit B.

¶12. Furthermore, neither Pacella nor his counsel responded to repeated inquiries of the Case Administrator assigned to the arbitral proceeding, Ms. Chante Little. Østvik Decl. ¶13.

Finally, two and a half months later, on January 7, 2020, Pacella's lawyer (Ben Richman) sent an email to Ms. Little, simply stating:

> Morning Chante: Our client will not agree to proceed before the AAA.
> Happy New Year.
> Best, Ben

Compl. ¶ 34. Østvik Decl., Ex. D.

On April 7, 2020, Richman informed Plaintiffs' lawyer they would go litigation unless Plaintiffs immediately agreed to a mediation. Østvik Decl. ¶15. Richman wrote to Plaintiffs' lawyer on the same day, reiterating his threat to proceed with "protracted litigation", informing him that the "complaints" had been drafted. As an alternative to the threatened litigation, he proposed mediating before one of three "neutrals" (proposed JAMS mediators who were, in fact, the farthest thing from neutral.) A true and correct copy of the April 7, 2020 email is attached to the Østvik Decl. as Exhibit E.

Pacella, in other words, clearly and unequivocally refused to arbitrate despite Plaintiffs' valid demand that he does so.[3] In sum, Plaintiff's counsel tried in vain to get the arbitration on track but Pacella unequivocally rejected, forfeited, and waived the right to arbitrate. Compl. ¶36.

---

[3]The Østvik Decl. recounts the details of Pacella's attempts to delay and deflect by paying lip service to "mediation" but finally refusing altogether. The Østvik Decl. also attaches the correspondence between the parties starting with the August 27, 2019 demand made by Pacella until Plaintiffs finally gave up on trying to get the arbitration on track. See Østvik Decl., Exhibits C-F.

**ARGUMENT**

I.      **STANDARD OF REVIEW**

On a motion to dismiss, the ultimate question is, taking all of the allegations in the complaint as true, whether the facts stated are legally sufficient to state a claim. *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The only question for the court in reviewing a motion to dismiss is whether the plaintiff's factual allegations establish an entitlement to relief that is plausible. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545-46 (2007). The Courts strongly disfavor and rarely grant motions to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6). 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 1357, at 598.

In determining whether the Complaint adequately pled a cause of action, the Court must presume that all allegations contained therein are true and draw all reasonable inferences in the Plaintiffs' favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). In fact, the Court must construe the motion to dismiss in a light most favorable to the non-moving party. *Pension Ben. Guar. Corp. ex rel, St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.,* 712 F.3d 705, 732 (2d Cir. 2013).

In order to survive a motion to dismiss pursuant to FCRP 12 (b)(6), the plaintiff must have pled a set of factual allegations that, if true, plausibly states a valid claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The question is not whether the claim will eventually prevail, "but whether [the] complaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer,* 131 S. Ct. 1280, 1296 (2011), *citing Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002). The Court further clarifies that "a

5

complaint need not pin plaintiff's claim for relief to a precise theory," but rather requires only a plausible "short and plain" statement of the plaintiff's claim. *Id.*

In fact, *Twombly* opines that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." 550 U.S. at 556, 127 S.Ct. 1955. *See also New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC,* 709 F.3d 109, 125 (2d Cir.2013). As the Plaintiff establishes herein, the Complaint goes above and beyond a well-pled Complaint.

"[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations*." Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Accordingly, Plaintiffs' Complaint must stand. Accepting all factual statements alleged in the Complaint as true, reading the Complaint "generously" and drawing all reasonable references in favor of Plaintiffs, Plaintiffs have pled all required elements to establish each and every one of its claims. *See*, *McCarthy v. Dun & Bradstreet Corp.,* 482 F. 3d 184, 191 (2d Cir. 2007).

## II.    PACELLA CANNOT COMPEL ARBITRATION OR STAY THE PROCEEDINGS

Plaintiffs do not dispute that there was a valid arbitration clause contained in <u>one</u> of Pacella's agreements that would govern disputes with Pacella over the contract. Plaintiffs also do not dispute that there is a strong federal policy in favor of arbitration. *See, e.g. Arciniaga v. General Motors Corp.,* 460 F.3d 231, 234 (2d Cir. 2006). Additionally, Plaintiffs acknowledge that the Court should employ the Federal Arbitration Act's ("FAA") policy favoring enforcement of arbitration agreements. However, here, Pacella has waived his right to arbitrate. Where, as here, a defendant has previously refused to submit to arbitration when the plaintiff was "ready,

able and willing to arbitrate its claim and arbitrators were standing by to hear it," the defendant

"ought not in fairness be able to shift its position and force arbitration on [the plaintiff]." *Farr*

*Whitlock Dixon & Co. v. S.S. Gen. Tsakalotos,* 244 F. Supp. 544, 546 (S.D.N.Y. 1965).

Moreover, the vast majority of the claims against Pacella and all claims against the other

Defendants are non-arbitrable. Therefore, given the intricately related nature of the allegations, it

is in the interest of justice and conservation of resources for the claims to be heard together in

one action.

### A. PACELLA PURPOSEFULLY AND UNEQUIVOCALLY WAIVED THE RIGHT TO ARBITRATE

Pacella forfeited his right to compel arbitration by refusing to arbitrate prior to the filing

of this action.

#### 1) It is for This Court to Decide the Waiver Issue

As a threshold matter, the Court must determine if it, rather than an arbitrator, can decide

whether Pacella has waived the right to arbitrate. See, e.g., *Bell,* 293 F.3d at 569–70; *Distajo I,*

66 F.3d at 456–57. The Second Circuit has also historically decided issues of waiver based on

pre-litigation refusals to arbitrate rather than submitting the issue to an arbitrator. *See Lane Ltd.*

*v. Larus & Brother Co*., 243 F.2d 364 (2d. Cir. 1957).

Despite conflicting authority following the US Supreme court dicta in *Howsam v. Dean*

*Witter Reynolds, Inc*., 537 U.S. 79 (2002), Second Circuit courts have routinely evaluated claims

that a party waived its right to arbitrate based on its litigation conduct and have continued to

apply pre–*Howsam* case law. *See, e.g., LG Electronics, Inc. v. Wi–Lan USA, Inc.,* 623 Fed.

Appx. 568, 569–70 (2d. Cir. 2015); *La. Stadium,* 626 F3d at 159–61; *Baker & Taylor, Inc.,* 602

F.3d at 490–92; *Brookridge Funding Corp. v. Nw. Human Resources, Inc.,* 170 Fed. Appx. 170,

171 (2d Cir. 2006); *Apple & Eve, LLC v. Yantai N. Andrew Juice Co.,* 610 F. Supp. 2d 226, 229–31 (E.D.N.Y. 2009).

In circumstances where the defense of waiver is based on pre-litigation conduct inconsistent with the right to arbitrate, courts in the Second Circuit have continued to apply *Lane, supra, see Canada Life Assur. Co. v. Guardian Life Ins. Co. of Am.*, 242 F. Supp. 2d 344, 353 (S.D.N.Y. 2003), or have simply evaluated the waiver issue without discussing who should resolve that issue, *see Zhang v. Wane*, 317 Fed.Appx. 26, 27–8 (2d Cir.2008). In addition, at least one district court in the Second Circuit has evaluated a defense of waiver based on a defendant's refusal to submit to arbitration once litigation began. *See Apple & Eve, LLC,* 610 F. Supp2d at 231–34.

### 2) Pacella's Pre-litigation Conduct, Waived and Forfeited his Right to Compel Arbitration

Although the presumption in favor of arbitration is strong, "the obligation to arbitrate nevertheless remains a creature of contract." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001); *see also Baker & Taylor, Inc. v. AlohaCraze.Com Corp.,* 602 F.3d 486, 490 (2d Cir. 2010) (explaining that "[t]here is ... nothing irrevocable about an agreement to arbitrate" (internal quotation omitted)). Therefore, parties to an arbitration agreement "may abandon this method of settling their differences, and under a variety of circumstances one party may waive or destroy by his conduct his right to insist upon arbitration." *Baker & Taylor, Inc.,* 602 F.3d at 490.

In this case, Plaintiffs' counsel sought to bring Pacella's dispute to arbitration for months. Pacella's counsel made the following statement concerning arbitration. ***Our client will not agree to proceed before the AAA.*** Compl. ¶ 34. Østvik Decl. Ex. D. Later, on April 7, 2020, Pacella's

8

counsel announced they were prepared to sue Plaintiffs in court, refusing arbitration altogether. Østvik Decl., Exhibit E.

It is hard to imagine a waiver more explicit than that. Pacella was represented by counsel, was in receipt of the arbitration demand and failed to cooperate with the arbitration process—not at the AAA nor elsewhere. Yet now, after Plaintiffs have spent significant amounts of time and money preparing and commencing this action, Pacella suddenly wants to arbitrate. It is too late.

Pacella does not explain away his prior refusal to arbitrate. Instead, Pacella addresses a waiver theory never advanced by Plaintiffs --waiver by post-litigation conduct. Pacella's motion papers argue that Pacella has not waived the right to arbitrate because "this filing is Pacella's first before the Court and, therefore, little time has elapsed from when the litigation was commenced until the instant request for arbitration" (Def. Mem at 22.) The moving papers fail to address or refute the pre-litigation refusal to arbitrate allegations contained in the Complaint. Pacella does not dispute that he knew of his right to arbitrate, and he does not deny that he explicitly refused to arbitrate. As the court explained in *In re Tyco,* 422 F.3d at 44–46, defendant "should not be allowed to reject [plaintiff's] demand for arbitration, stand idle, then submit a motion to compel arbitration after [plaintiff] has been required to commence a court proceeding". *See also O.J. Distrib., Inc.,* 340 F.3d at 357–59 (holding that defendant waived its right to compel arbitration because it acted "completely inconsistent with any reliance" upon the arbitration provision for more than a year and delayed its assertion of its right to arbitrate until plaintiff filed suit); *Lane,* 243 F.2d at 367 (holding that "by refusing to arbitrate the precise questions involved in this suit, [defendant] had forfeited its own right to arbitrate").

Here, by explicitly refusing to arbitrate the instant dispute, Pacella waived his right to compel arbitration. A party's pre-litigation conduct that is inconsistent with the right to arbitrate can amount to a waiver of that right. The Second Circuit explained:

> A party cannot raise unjustifiable objections to a valid demand for arbitration, all the while protesting its willingness in principle to arbitrate and then, when the other side has been forced to abandon its demand, seek to defeat a judicial determination by asking for arbitration after suit has been commenced.

*Lane.* 243 F.2d at 367. *See also In Re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 46 (1st Cir. 2005) (defendant's blanket refusal to participate in arbitration for six months until the arbitration was dismissed constituted waiver of the right to arbitrate).

### 3)  **Pacella's Conduct Has Prejudiced Plaintiffs**

Even if Pacella's waiver had not been so explicit, he could have also waived his right to arbitration by taking actions "inconsistent with that right" that prejudice the opposing party. *Doctor's Assoc., Inc. v. Distajo,* 66 F.3d 438, 455 (2d Cir. 1995) (*quoting Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966) (*per curiam*)). As the Second Circuit has emphasized, "[t]he key to a waiver analysis is prejudice." *Thyssen*, 310 F.3d at 105.

 Here, Plaintiffs have most certainly been prejudiced by the waiver.  Østvik Decl. ¶ 18. Putting aside the wasted resources in drafting the Demand for Arbitration, paying the fees to initiate the case and paying the lawyers to participate while the AAA administrator attempted to get the proceedings moving, Plaintiffs have expended enormous resources in the year since its first attempt to arbitrate its dispute - -hiring lawyers in a different venue, bringing an entirely new legal team in to mount a federal court case instead of the simpler arbitration. Now, Plaintiffs suddenly find Pacella has had a change of heart. Østvik Decl. ¶ 18.

Plaintiffs have shown "prejudice due to excessive cost and time delay," based on those costs they incurred resulting from Pacella's refusal to participate in the AAA arbitration. *Id.* Especially where, as here, "the record strongly suggests a deliberate strategy unilaterally designed to delay the arbitration proceedings," courts have found that the costs involved in submitting a "doomed AAA demand for arbitration, in filing its district court complaint," and in defending a motion to compel are sufficient to constitute prejudice. *Tyco*, 422 F.3d at 46; *see Schreiber*, 2017 WL 5564114, at \*12 (finding prejudice where "the costs that [plaintiff] has incurred are the result of the fact that [defendant] initially refused to arbitrate and only sought to invoke his right to arbitrate after [plaintiff] filed suit."); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1013 (9th Cir. 2005) ("[W]e have no trouble concluding that the delay and costs incurred by Brown are prejudicial for the purpose of waiver analysis.").

In *Spano v. V & J Nat'l Enterprises, LLC*, the plaintiff became aware of an agreement requiring arbitration after he commenced litigation and accordingly filed an arbitration demand with the AAA. 264 F. Supp. 3d 440, 449 (W.D.N.Y. 2017). Defendants moved in court to compel plaintiff to arbitrate. *Id.* However, like Pacella, the *Spano* defendants did not respond to the AAA's correspondence requesting the payment of filing fees for almost two months. *Id.* The AAA terminated the proceeding due to the defendants' failure to pay the required fees, and two business days later, defendants attempted to make the required payment. *Id.* at 456. The *Spano* court denied the defendants' motion to compel, finding that the "glaring absence of *any response*" to the AAA letters until the termination letter constituted a waiver, and that both the delay and the additional litigation costs plaintiff had to expend constituted prejudice. *See id.* at 457–58.

11

Given Pacella's clear and intentional waiver, coupled with the significant prejudice to Plaintiffs, this Court should deny Pacella's motion to compel arbitration.

### III.    THIS COURT HAS PERSONAL JURISDICTION OVER PACELLA

While the ultimate burden of proof rests with the party asserting jurisdiction, at this early stage, Plaintiffs need only make a *prima facie* showing that jurisdiction exists. *In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 317–18 (S.D.N.Y. 2020). Plaintiffs have properly alleged that this Court has jurisdiction over all Defendants, including Pacella, and Pacella's motion must be denied as a result.

Specific jurisdiction pursuant to CPLR § 302(a)(2), provides that a non-domiciliary is subject to the jurisdiction of a New York court if it has purposefully transacted business within the State, and there is a "substantial relationship" between this activity and the plaintiff's cause of action. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195 (1988); *see also McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643 (1981).

Section 302 of the CPLR allows a plaintiff to establish personal jurisdiction over a defendant in various ways. The court can establish personal jurisdiction when a defendant is alleged to have committed a tortious act within the state and/or without the state causing injury to person or property within the state, if he/it:

> …expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. § 302(a)(1)[.]

Here, Plaintiffs have alleged tortious conduct both within and without New York, giving rise to specific jurisdiction under New York's long arm statute. Compl. ¶ 28-30, 73, 94-114. Plaintiffs allege that the torts were committed against Østvik at locations within New York State,

and that these were deliberate, intentional acts, which brought substantial revenue to Defendants thus conferring personal jurisdiction over Defendants.

## IV.    THE FIRST AMENDED COMPLAINT PLEADS ACTIONABLE CLAIMS IN ALL OF THEIR ELEMENTS

### A.    The RICO Elements are Sufficiently Pled

Far from the "ordinary business dispute" claimed by Pacella, the Complaint. clearly sets forth predicate acts committed by Pacella constituting a pattern of racketeering activity, the existence of a continuous enterprise with a defined structure, and injury to Plaintiffs flowing directly from the enterprise's activities. At this early stage of the lawsuit, nothing more is required.

Plaintiffs can allege a violation of 18 U.S.C. § 1962(b) by alleging "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 554 (S.D.N.Y. 2018) (Broderick, J.) (citation omitted). Plaintiffs must also plead statutory standing, consisting of "(1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation." Plaintiffs more than adequately allege each of these elements, and Pacella's arguments to the contrary hold no water.

Pacella argues:

1. This is no more than a business dispute;
2. Plaintiffs cannot establish continuity of conduct, so as to establish Defendants engaged in a "pattern of racketeering activity";
3. Plaintiffs cannot demonstrate a "pattern of racketeering activity" because "RICO does not apply to isolated or sporadic criminal acts; and
4. Plaintiffs cannot establish that Defendants were engaged in an "enterprise," which requires a showing that each of the individual members "'share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.

13

Plaintiffs have pled all four of these elements and are entitled to proceed to the discovery phase. The Complaint alleges that "Edelson, Pacella and Richman (and other unknown associates) used their strategic alliance to actively seek out young, up-and-coming companies and wrongfully acquire cash or equity stakes in such companies." Complaint ¶ 188. Defendant Pacella's current position as an executive at a boutique investment bank gives him ample opportunity to identify other targets for the enterprise alleged in the FAC. *See* auctuscapitalinc.com/professionals/ (biography of Matthew Pacella). Further, the Complaint alleges that Defendants' activities began in July 2017, *id.* ¶ 76, and continued through 2020, thereby lasting over two years. The Complaint therefore sets forth an open-ended continuous pattern of racketeering activity with the requisite duration to constitute a statutory violation. *See, e.g., GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463 (2d Cir. 2995).

Not unlike his unsuccessful challenge to causation, Pacella's attempt to challenge the Complaint's pleading of predicate acts must fail, because the Complaint does in fact assert acts undertaken by the Defendants after April 2018. Complaint ¶¶ 144, 148, 159, 198-200. Nor should the *Noerr-Pennington* doctrine provide immunity for communications by lawyers against its former client threatening to reveal that client's confidential communications, as such communications violate ethical rules and lack even a scintilla of good faith.[4]

Finally, Pacella makes a futile attempt to challenge the Complaint's allegations concerning the existence of a RICO "enterprise." The Complaint alleges that the Edelson Defendants (consisting of the Edelson law firm, Richman, and Edelson himself) functioned as an "association in fact" enterprise along with Pacella. Complaint ¶¶ 187-188. This satisfies the

---

[4] In addition, several of the predicate acts on which Plaintiffs rely, namely personal conversations between Pacella and Østvik in which Pacella threatened to disclose Østvik's confidences, fall well outside the scope of litigation-related communications purportedly protected by *Noerr Pennington*. *See* Complaint ¶ 198-199

requirements for alleging an "enterprise" as set forth by the Supreme Court, namely "(1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit those associates to pursue the enterprise's purpose." *Boyle v. United States,* 556 U.S. 938 (2009). The Edelson Defendants and Pacella cannot use their licenses to practice law as shields, when they were used as swords.  As described throughout the Complaint, Defendants used their very roles as attorneys to gain confidences that were later used as leverage in their scheme. The claim that attorneys working on behalf of a client cannot create an "enterprise" as a matter of law, is incorrect. *See Mayfield v. Asta Funding, Inc.*, 95 F.Supp.3d 685, 699-700 (S.D.N.Y. 2015) (association in fact enterprise existed between debt funding company which purchased debts and law firm which conducted litigation strategy conceived by funding company's principal); *Kruse v. Repp*, 2020 WL 1317479 (S.D. Iowa 2020) (finding that association-in-fact enterprise existed between attorney and client for the purpose of fraudulently shielding client's assets from potential judgment creditor).

B.  The CFAA Claim is Sufficiently Pled

Plaintiffs have adequately pled that Pacella violated 18 U.S.C. § 1030(a)(5)(C), which requires a showing that Pacella "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss".

 In particular, the Complaint alleges Pacella attempted to access his email accounts, the data for which are stored on a protected servers by initiating nearly two dozen log-in attempts, the most recent of which occurred on July 6, 2020.  Plaintiffs have suffered "loss" as defined under the CFAA by reason of the fees paid to their forensic IT consultants. It is well settled that expenses incurred to evaluate and remediate the damage to a compromised computer network qualify as "loss" within the meaning of the CFAA. S*ee Univ. Sports Pub. Co. v. Playmakers*

*Media Co.*, 725 F.Supp.2d 378, 388 (S.D.N.Y. 2010)*; I.M.S. Inquiry Mgmt. Sys. v. Berkshire*

*Info. Sys. Inc.*, 307 F.Supp.2d 521, 526 (S.D.N.Y. 2004) (costs of damage assessment and

remedial measures can constitute "loss" as defined in the CFAA). Similarly, Plaintiffs have

suffered "damage" as defined under the CFAA due to Pacella's theft of Plaintiffs' internal

documents. See 18 U.S.C. § 1030(e)(8) (defining "damage" as "any impairment to the integrity

or availability of data, a system, or information").

Plaintiffs can also show a violation of 18 U.S.C. § 1030(a)(4), which requires a showing

that Pacella "knowingly, and with an intent to defraud, accesses a protected computer without

authorization, or exceeds authorized access, and by means of such conduct furthers the intended

fraud and obtains anything of value . . . " In this regard, Pacella has clearly accessed Plaintiffs'

computer system, after the termination of his employment, and utilized those documents to

contact Plaintiffs' investors for purposes antagonistic to Plaintiffs' interests.

This is precisely the sort of harm which the CFAA is designed to prevent. *In Calyon v.*

*Mizuho Sec. USA, Inc.,* No. 07 Civ.2241(RO), 2007 WL 2618658 (S.D.N.Y. July 24, 2007), a

case with strikingly similar facts, the Court made clear that the CFAA provides employers a

remedy for such unlawful activity. "[T]he statute seems to contemplate that, whatever else,

'without access' and 'exceeds authorized access' would include an employee who is accessing

documents on a computer system which that employee had to know was in contravention of the

wishes and interest of his employer." Id. at *1 (upholding plaintiffs CFAA claim where plaintiff

alleged that after their resignations defendants "emailed copies of [proprietary] documents to

their personal email accounts" in violation of company policy). There are many similar decisions

from other courts: *Mintel Int'l Group, Ltd. v. Neergheen,* No. 08-CV-3939, 2008 WL 2782818,

at *3 (N.D. Ill. July 16, 2008) (granting temporary restraining order where "[t]he day before his

16

resignation, [the employee] copied, e-mailed to his personal e-mail address and/or printed

information from his work computer"); *Hudson Global Res. Holdings, Inc. v. Hill,* No.

02:07cv0132, 2007 WL 1545678, at *11 (W.D. Pa. May 25, 2007) (granting an injunction where

employee misappropriated employer's data onto a portable storage device and personal

computer); *Pharmerica, Inc. v. Arledge,* No. 8:07-CV-486-T-26MAP, 2007 WL 865510, at *7

(M.D. Fla. Mar. 21, 2007) (holding employer was likely to succeed on a CFAA claim where

employee downloaded "highly confidential" documents to his personal account); *Int'l Sec.*

*Mgmt. Group, Inc. v. Sawyer,* No. 3:06cv0456, 2006 WL 1638537, at *20 (M.D. Tenn. June 6,

2006) ("An employee who exceeds authorized access to an employer's computer may violate the

CFAA.").

C.  <u>The Prima Facie Tort Claim is Sufficiently Pled</u>

The Complaint states a well-pleaded claim against Pacella for Prima Facie or Intentional

Tort arising out of the extortionate acts as well as other wrongful actions that damaged Plaintiffs.

Pacella asserts that New York law does not recognize the tort of "extortion", ignoring the

fact that Plaintiffs' Fourth Cause of Action expressly labeled "intentional tort: extortion." In

other words, Plaintiffs are setting forth a claim for common law prima facie tort, a cause of

action long accepted in New York. As the New York Court of Appeals has stated:

> Some years ago this court recognized the general principle that harm intentionally
> inflicted is prima facie actionable unless justified (see *Advance Music Corp. v. American
> Tobacco Co.,* 296 N.Y. 79, 70 N.E.2d 401; *American Guild of Musical Artists v.
> Petrillo,* 286 N.Y. 226, 36 N.E.2d 123; *Opera on Tour v. Weber,* 285 N.Y. 348, 34
> N.E.2d 349, cert. den. 314 U.S. 615, 62 S.Ct. 96, 86 L.Ed. 495). That principle has
> developed into the specific cause of action of prima facie tort consisting of four elements:
> (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or
> justification, (4) by an act or series of acts that would otherwise be lawful … While prima
> facie tort may be pleaded in the alternative with a traditional tort, once a traditional tort is
> established the cause of action for prima facie tort disappears (*Board of Educ. v.
> Farmingdale Classroom Teachers Assn.,* 38 N.Y.2d 397, 406, 380 N.Y.S.2d 635, 343

N.E.2d 278, *supra* ).

*Curiano v. Suozzi*, 63 N.Y.2d 113, 117, 469 N.E.2d 1324, 1327 (1984). The Complaint clearly alleges each of the four elements identified by the Court of Appeals in *Curiano*. *See* Compl. ¶¶ 214-220. As such, Plaintiffs have stated a claim for prima facie tort based on the enterprise's extortion scheme, and Plaintiffs' fourth claim for relief ought to be sustained as a result.

Nowhere were the fruits of this tort more plainly evident than in the Edelson Firm's March 2020 demand letter to Plaintiffs on behalf of Melnik in which Pacella and his attorneys directly leverage the confidential information disclosed by Pacella in an effort to extract a cash payment to Melnik from Plaintiffs. As described in the Complaint, "[t]he letter claimed Melnik – who only ever spoke to Pacella about his acquisition of VPEF equity – had expected Pacella to remain at VPEF, had expected an imminent acquisition …, and that VPEF was imminently closing a project financing (the very project financing that Pacella was pursuing through July 2019)." Compl. ¶ 158.

Finally, the Complaint pleads substantial money damages suffered by Plaintiffs as the result of Pacella's wrongful conduct in tortiously interfering with Plaintiffs' contractual relations. Compl. ¶ 236. Such allegations are clearly sufficient for pleading purposes, and Pacella's protestations otherwise are flatly contradicted by well-established law.

In the case cited by Pacella for the proposition there is no private right of action for civil conspiracy in New York, *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 713 (2d Cir. 2019), plaintiffs impermissibly attempted to assert a civil cause of action for extortion under color of federal and state penal laws. Here, Plaintiffs have propounded a cognizable civil claim for intentional tort in which the underlying wrongdoing – coercion through the wrongful use of actual or threatened force, violence and fear – is in the nature of extortion. *See Minnelli v.*

*Soumayah*, 41 A.D.3d 388, 389, 839 N.Y.S.2d 727, 728 (1st Dep't 2007) (even in the absence of a private cause of action for extortion, "extortionate behavior, coercion and duress" may be elements of a cause of action for intentional tort or unjust enrichment).

D.   The Breach of Contract Claim is Sufficiently Pled

The Complaint states a well-pleaded claim against Pacella for Under New York law, the elements of a cause of action for breach of contract are  (1) the existence of a valid contract (2) breach, (3) Plaintiff's performance (4) damages.  The Complaint provides ample factual detail as to each element, and in doing so more than capably satisfies the pleading standard for the breach of contract claim against Pacella.

As plainly stated in the Complaint, as a condition of his employment with Plaintiffs, Pacella "signed and agreed to be bound by the terms of a non-solicitation, confidentiality and intellectual property agreement." Compl. ¶ 224. The Complaint also details how Pacella's position as Plaintiffs' general counsel gave him access to highly confidential and proprietary information which he shared with others despite contractual prohibitions against such unauthorized disclosure. See, e.g., Compl. ¶ 62 ("Within a few days of Pacella and Melnik first discussing an arrangement, Pacella arranged for Melnik to have access to confidential materials on May 8, 2017"), 65, 83-84, 118-119, 148, 158, 233. The Complaint further details how Pacella repeatedly engaged in material breaches of his confidentiality and intellectual property agreement with Plaintiffs, using the information gleaned from Plaintiffs to support Defendants' unjustified, unlawful demands for cash payments and equity in VPEF and Ecogensus. See, e.g., Compl. ¶ 83-84, 118-119, 129, 148-159.

19

E.   The Fiduciary Duty Claim is Sufficiently Pled

As alleged therein, Pacella, as Østvik's personal lawyer and General Counsel to the corporate Plaintiffs, and the Edelson Defendants, as counsel to Østvik, VPEF and Ecogensus, owed Plaintiffs the fiduciary duties that all attorneys owe to their clients.  *See In re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14, 17 (2d Cir. 1986) ("As a matter of professional responsibility, an attorney owes a duty of loyalty to his client … not to divulge confidential communications from the client … and not to accept representation of a person whose interests are opposed to those of the client."); *Bank Brussells Lambert v. Credit Lyonnais (Suisse)*, 220 F. Supp. 2d 283, 286 (S.D.N.Y. 2002) ("fiduciary duties of loyalty and confidentiality" are "owed by attorneys to their clients").  The Complaint is replete with details of Pacella's repeated breaches of his fiduciary obligations to Plaintiffs by, *inter alia*, (i) acting in his own self-interests, (ii) contacting Board Members, investors and outside counsel, (iii) conspiring with third parties, (iv) abusing the Plaintiffs' confidences by threatening to make public highly confidential information, (v) threatening violence against Østvik and demanding a cash payout outside of his retainer arrangement, and (vi) demanding an equity interest in VPM and Ecogensus. *See*, *e.g.*, Compl. ¶¶ 47-48, 57, 62-63, 76-80, 83-90, 94-171. Pacella cites *Gifford v. United N. Mortg. Bankers, Ltd.*, No. 18-6324, 2019 WL 3685225, at *9 (S.D.N.Y. July 8, 2019), a case where plaintiff's complaint utterly failed to explain who the defendants were, and what role, if any, they specifically played in the transactions and proceedings at issue therein, is easily distinguished. Here Plaintiff's claim for breach of fiduciary duty is amply supported by details regarding Pacella's role as General Counsel to the business Plaintiffs and personal lawyer to Plaintiff Østvik, the fiduciary duties incumbent upon Pacella as an attorney hired to represent Plaintiffs' interests, and Pacella's breach of his fiduciary duties by, *inter alia*, conspiring with

20

third parties, abusing the Plaintiffs' confidences by threatening to make public highly confidential information, threatening violence against Østvik and demanding a cash payout outside the retainer arrangement or legal representation. *See, e.g.*, *Litvinoff v. Wright*, 150 A.D.3d 714, 715, 54 N.Y.S.3d 22, 24 (2017) ("The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.").

F.   Aiding and Abetting Claim is Sufficiently Pled

To state a claim for aiding and abetting a breach of fiduciary duty under New York law, a plaintiff must allege: "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (quoting *Kaufman v. Cohen*, 307 A.D.2d 113, 125, 760 N.Y.S.2d 157 (1st Dep't 2003)); *accord Lightbox Ventures, LLC v. 3rd Home Ltd.*, No. 16 Civ. 2379, 2017 WL 5312187 at *14 (S.D.N.Y. Nov. 13, 2017). The Complaint satisfies these pleading requirements.

The Complaint likewise describes in detail the Edelson Defendants' flagrant flaunting of their own fiduciary duties to Plaintiffs by, *inter alia*, representing parties adverse to Plaintiffs' interests, repeatedly demanding monies outside of their legal representation and issuing threats to Plaintiffs to extort such money. *See*, *e.g.*, Compl. ¶¶ 78- 80, 88-93, 103-104, 117, 135-137, 143-168.

Pacella knowingly induced and participated in his co-defendants' breaches of their fiduciary obligations to Plaintiffs. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006) ("A person knowingly participates in a breach of fiduciary duty" when "he or she provides substantial assistance to the primary violator."). To wit, the Complaint describes how Pacella

21

willingly served as the go-between in the Pacella/Edelson Enterprise, to give the Pacella/Edelson Enterprise a solid position to infiltrate Plaintiffs' companies, and later by purposely retaining the Edelson Firm, who demanded cash payments from Plaintiffs on Pacella's behalf using, *inter alia*, threats to make public highly confidential information obtained by Pacella and the Edelson Defendants through their legal representation of Plaintiffs. *See*, *e.g.*, Compl. ¶¶ 59-62, 118-120, 148-159. Pacella's half-hearted efforts to distract the Court from these allegations, depicting his critical role in the events giving rise to the alleged breaches of fiduciary duty by Pacella's co-defendants, should be disregarded out of hand by the Court.

Furthermore, the damages alleged by Plaintiffs in support of their claim for aiding and abetting liability (Compl. ¶¶ 260-262) are plainly sufficient for pleading purposes. *See Bos. Consulting Grp., Inc.*, 2020 WL 5731963, at *6; *LivePerson, Inc.*, 83 F. Supp. 3d at 516.

As Pacella has failed to assert any valid basis for dismissal of Plaintiffs' claim for aiding and abetting breaches of fiduciary duty, his motion with regard to this claim should be denied. Pacella's reliance on *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011) is misplaced. Unlike the plaintiff in *Marino*, here Plaintiffs have properly alleged an underlying breach of fiduciary duty – in fact, Plaintiffs have alleged a litany of breaches committed by Pacella and the Edelson Defendants – supplying an ample basis to derive aiding and abetting liability.

Pacella tried to liken the claims herein to those in *Gifford v. United N. Mortg. Bankers, Ltd.*, No. 18-6324, 2019 WL 3685225, at *9 (S.D.N.Y. July 8, 2019), a case where plaintiff's complaint utterly failed to explain who the defendants were, and what role, if any, they specifically played in the transactions and proceedings at issue therein. *Gifford*, therefore, is easily distinguishable, since here Plaintiff's claim for breach of fiduciary duty is amply

supported by details regarding Pacella's role as General Counsel to the corporate Plaintiffs and personal lawyer to Plaintiff Østvik.  The Complaint further details the fiduciary duties incumbent upon Pacella as an attorney hired to represent Plaintiffs' interests, and Pacella's breach of his fiduciary duties by, *inter alia*, conspiring with third parties, abusing the Plaintiffs' confidences by threatening to make public highly confidential information, threatening violence against Østvik and demanding a cash payout or legal representation.  *See, e.g.*, *Litvinoff v. Wright*, 150 A.D.3d 714, 715, 54 N.Y.S.3d 22, 24 (2017) ("The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.").

### G.  The Conspiracy Claim is Sufficiently Pled

Contrary to Pacella's characterization, Plaintiffs' claim for conspiracy to commit an intentional tort does not rely on "threadbare recitals" or "conclusory statements," but rather details (by reference to allegations interposed throughout the Complaint) how Defendants, through their words and actions, displayed a conscious agreement to become part of the conspiracy to commit intentional torts. Nothing more is required at the pleading stage. *Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d at 184 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.") (quoting *Twombly*, 550 U.S. at 556).

23

V.     **THE COURT HAS ORIGINAL JURISDICTION AND SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' S FEDERAL AND STATE LAW CLAIMS AGAINST PACELLA**

Although asserted under state law, the Court nevertheless possesses subject matter jurisdiction to hear Plaintiffs' claims against Pacella since they indisputably form part of the "same case or controversy" as Plaintiffs' claims against Pacella's co-defendants under the federal RICO statutes. Pacella's efforts to otherwise convince the Court to decline to exercise its undeniable supplemental jurisdiction over Plaintiffs' state law claims are unavailing.

As a threshold matter, in accordance with 28 U.S.C. § 1331, this Court possesses subject matter jurisdiction to decide all causes of action arising under the laws of the United States. *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010) (a district court has federal question jurisdiction pursuant to Article III and 28 U.S.C. § 1331 provided that "the claim as stated in the complaint 'arises under the Constitution or laws of the United States.'") The scope of this Court's "original" subject matter jurisdiction therefore necessarily encompasses Plaintiffs' causes of action for relief asserted under the federal C.F.A.A. and RICO statutes. *See*, *e.g.*, *Bangladesh Bank v. Rizal Commercial Banking Corp.*, No. 19 CIV. 983 (LGS), 2020 WL 1322275, at *5 (S.D.N.Y. Mar. 20, 2020) (denying motion to dismiss for lack of subject matter jurisdiction claim arising under 18 U.S.C. § 1962(c)); *Advanced Aerofoil Techs., AG v. Todaro*, No. 11 CIV. 9505 ALC DCF, 2013 WL 410873, at *4 (S.D.N.Y. Jan. 30, 2013)("Defendants' alleged violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 (2009)[] present a federal question conferring subject matter jurisdiction.").[5]

With "original" jurisdiction over Plaintiffs' federal-question claims clearly established,

---

[5] As for diversity jurisdiction. since Pacella's membership interests terminated with his termination of employment, so he does not defeat diversity jurisdiction. Complaint ¶ 211.

the Court may turn its jurisdictional analysis to Plaintiffs' state law claims against Pacella and his co-defendants. In regard to these "ancillary" claims, 28 U.S.C. § 1367(a) directs that the Court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Such ancillary claims "form part of the same case or controversy" as the claim conferring subject matter jurisdiction when they stem from the same "common nucleus of operative fact; in other words, they must be such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (internal quotation marks omitted).

Plaintiffs' state law claims against Pacella overlap to a substantial degree with the facts underlying Plaintiffs' claims for relief under the CFAA and RICO statutes, so as to confer supplemental jurisdiction. For example, Plaintiffs' tort and fiduciary duty claims against Pacella share a multitude of facts in common with Plaintiffs' RICO and CFAA claims including, *inter alia*, facts surrounding the demands by Pacella and the Edelson Defendants for monies outside of their legal representation of Plaintiffs and the extortionate threats made in connection therewith, which not only violated their fiduciary duties to Plaintiffs but also constituted predicate acts of racketeering in violation of RICO. Compl. ¶¶ 190-200, 243-244, 253-254

Accordingly, there is no basis for this Court to decline supplemental jurisdiction.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Pacella's motion in all respects and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
       November 20, 2020

                  **GUZOV, LLC**
                  *Attorneys for Defendants*

By:_____
                  Debra J. Guzov, Esq.
                  David J. Kaplan, Esq.
                  Anne W. Salisbury Esq.

.

                  805 Third Avenue, 8th Floor
                  New York, New York 10022
                  (212) 371-8008
                  dguzov@guzovllc.com